UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

FREDERICK SCHOLTISEK, on behalf
of himself and all other employees similarly
situated, et al.,

                                     Plaintiffs,

                                                                               <u>DECISION AND ORDER</u>

                                                                               03-CV-6656L

                                       v.

ELDRE CORPORATION,

                                     Defendant.
_____

      Plaintiff, Fredrick Scholtisek, commenced this action against his former employer, Eldre Corporation ("Eldre"), alleging that Eldre has violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, and the New York Labor Law by willfully making impermissible deductions from the pay of employees who are paid on a salary basis. Plaintiff seeks declaratory relief and money damages, on behalf of himself and all other similarly situated employees. The Court has previously certified this action as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure, and directed that notice of plaintiff's claims be sent to all class members. 229 F.R.D. 381 (W.D.N.Y. 2005).

      In anticipation of trial, Eldre has filed a motion *in limine* seeking an order precluding the use of any testimony concerning certain conversations between Kathleen Davis, Eldre's former Human Resources Manager, and Arthur Abelson, who prior to his death was Executive Vice President of

Eldre. Abelson made the subject statements in response to Davis' inquiry concerning certain wage matters, on behalf of a particular employee. Because the comments reference Eldre's attorneys, Eldre contends that the conversations are protected by the attorney-client privilege. For the reasons that follow, Eldre's motion is denied.

## BACKGROUND

Davis testified at her deposition that her duties as Human Resources Manager included screening and interviewing job applicants, conducting exit interviews, helping employees obtain benefits, explaining their benefits to them, and generally acting as a liaison between employees and management. Dkt. #154 Ex. G at 20. She was not primarily responsible for handing Eldre's payroll, though she served as a backup for the person who did handle the payroll. *Id.* at 20, 78.

Davis helped type Eldre's 1999 revised handbook for exempt employees (which contained various information about Eldre's wage and hour policies and practices), but she did not make decisions with respect to the policies set forth in the handbook. *Id.* at 25, 41.

At one point, Davis testified that on a certain occasion in about the second or third year of her employment at Eldre, she "had an employee get angry because their pay was docked." *Id.* at 39. She stated that she "went to Mr. Abelson at the time with the employee's complaint, and [she] was told that this handbook had been gone over by the company's attorneys and everything in it was legal." *Id.*[1] It is this conversation to which Eldre objects.

---

[1] Davis also testified that it was her recollection that after the revised handbook had been typed up, "it [went] off to the company attorneys to be reviewed," though she could not
(continued...)

Davis testified that she told Abelson that she "d[id]n't recall seeing a policy like that before for a salaried employee." Dkt. #161 Ex. A at 44. The policy she was referring to was Eldre's policy of docking salaried employees' pay for partial-day absences. *Id.* at 43, 46. Davis stated that she "wanted to get an answer [from Abelson] to have something to say to this employee to hopefully make them understand that this was company policy and, you know, that was it." *Id.* at 45.

After plaintiffs' attorney had asked her a few more questions about this topic, Eldre's attorney stated, "I think I just want to put an objection on the record to preserve an argument that any conversations with Mr. Abelson regarding attorneys is [sic] protected by the attorney/client privilege by virtue of Miss Davis' position." *Id.* at 47. Plaintiffs' attorney responded, "Obviously we'll be litigating that at a later point ... ." *Id.*

## DISCUSSION

### I. Privileged Communications

Defendant contends that Abelson's alleged statements to Davis that Eldre's attorneys had reviewed the company handbook and that "everything in it was legal" are protected by the attorney-client privilege. Plaintiffs contend that Eldre has waive the privilege with respect to those statements, in a number of ways.

---

[1](...continued)
remember who told her that. *Id.* at 41-42.

Before reaching the issue of waiver, though, there is a threshold question whether any privileged information was transmitted by Abelson to Davis in the first place. I am not convinced that it was.

To invoke the attorney-client privilege, a party must demonstrate that there was (1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) made for the purpose of obtaining or providing legal advice. *United States v. Construction Products Research, Inc.*, 73 F.3d 464, 473 (2d Cir.), *cert. denied*, 519 U.S. 927 (1996). "It is ... well established that the party invoking a privilege bears the burden of establishing its applicability to the case at hand." *In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002*, 318 F.3d 379, 384 (2d Cir. 2003); *see also United States v. International Bhd. of Teamsters*, 119 F.3d 210, 214 (2d Cir. 1997) (holding that party invoking attorney-client privilege bears the burden of establishing "all of its elements"); *United States v. Construction Prods. Research, Inc.*, 73 F.3d 464, 473-74 (2d Cir. 1996) (rejecting attorney-client and work product privilege claims where party failed to establish the essential elements). "The burden is a heavy one, because privileges are neither 'lightly created nor expansively construed.'" *In re Grand Jury Subpoenas*, 318 F.3d at 384 (quoting *United States v. Nixon*, 418 U.S. 683, 710 (1974)).

There are several problems with Eldre's assertion of the privilege here. First, it has not been established that there *was* a "communication between client and counsel" concerning Eldre's pay-docking policies. *See In re Subpeona of Curran*, No. 3:04-MC-039, 2004 WL 2099870, at *5 (N.D.Tex. Sept. 20, 2004) ("The first element of the attorney-client privilege test looks to see if any confidential communications took place"). Eldre has expressly disclaimed any reliance on an advice-of-counsel defense, and several of its officers have testified that Eldre did *not* obtain any

legal advice or opinions about those policies or the employee handbook.  *See* Declaration of Robert C. Weissflach (Dkt. #154) ¶¶ 26, 27, and deposition excerpts cited therein.

In addition, even taking Abelson at his (alleged) word that Eldre's attorneys had gone over the employee handbook, he never said that the *attorneys* had stated that everything in the handbook was legal.  According to Davis, Abelson told her only that (1) the attorneys had reviewed the handbook and (2) everything in it was legal.

Taken together, those two statements might reasonably be interpreted as implying that the attorneys had told Eldre that everything in the handbook was legal, but that conclusion is not inescapable.  It could also reasonably be inferred to mean only that the attorneys had not, to Abelson's knowledge, stated that anything in the handbook was *il*legal, and that it was simply Abelson's own opinion that everything in it was legal.

As stated, the burden of establishing the applicability of the privilege is on Eldre, and because of that, any ambiguities are to be construed against Eldre.  *See*, *e.g.*, *Matter of Grand Jury Empanelled February 14, 1978*, 603 F.2d 469, 474 (3d Cir. 1979) ("To the extent that the record is ambiguous as to the elements which are necessary to establish the claim of privilege, 'The burden of proving that the (attorney-client) privilege applies is placed upon the party asserting the privilege'") (quoting *United States v. Landof*, 591 F.2d 36, 38 (9th Cir. 1978)); *Bell v. Pfizer, Inc.*, No. 03 Civ. 9945, 2005 WL 1560488, at *7 n. 6 (S.D.N.Y. July 5, 2005) ("Since defendants bear the burden of demonstrating the existence of the attorney-client privilege, the ambiguity [concerning the date on which a certain document was created] must be construed against them"); *Heublein, Inc. v. E & J Gallo Winery, Inc.*, No. 94 Civ. 8155, 1995 WL 645438, at *2 (S.D.N.Y. Nov. 1, 1995) ("The burden of sustaining the claim of privilege is on Heublein.  Because the record is ambiguous,

Heublein has not sustained its burden") (citing *Von Bulow by Auersperg v. Von Bulow*, 811 F.2d 136, 144 (2d Cir.), *cert. denied*, 481 U.S. 1015 (1987)).  To the extent that Abelson's alleged statements were ambiguous with respect to what, if anything, Eldre's attorneys said about the policies set forth in the employee handbook, that ambiguity is construed against Eldre, and I do not find that defendant has established that any privileged communications occurred in that regard.

**II. Waiver**

Even if Abelson's alleged statements were taken to mean that Eldre's attorneys had given the employee handbook their imprimatur, I find that any privilege that had attached to such communications was waived when Abelson related them to Davis.[2]

---

[2] I am not persuaded by plaintiffs' contention that Eldre waived the privilege by not timely objecting at Davis's deposition, and by not objecting when other witnesses were asked about attorney review of Eldre's policies and handbooks.  Although counsel may not have immediately objected when plaintiffs' attorney began asking Davis about her conversation with Abelson, he did object during the general course of her testimony on that subject, and since it was not initially apparent that Davis would begin testifying about potentially privileged communications, I find that his objection was timely made.  *Cf. Kraemer v. Franklin & Marshall College*, No. CIV.A. 95-0020, 1995 WL 447634, at *2 (E.D.Pa. July 27, 1995) (because defense counsel failed to object to questions concerning witness's conversation with defendant's attorney at any time during his deposition, defendant waived any privilege attached to this communication).

Likewise, the fact that counsel did not object to certain questions to, and testimony by, other witnesses did not waive the privilege.  In general, those witnesses testified that Eldre had *not* obtained any legal advice concerning Eldre's hour and wage policies prior to this lawsuit. *See, e.g.*, Dkt. #154 Ex. C at 67; Ex. E at 28; Ex. F at 30.  Since the general nature of an attorney's services, or the mere fact of legal consultation, is not protected by the privilege, there was no basis for objecting to these questions.  *See GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1273 (Fed. Cir. 2001) (citing *Nguyen v. Excel Corp.*, 197 F.3d 200, 206 (5th Cir. 1999), *cert. denied*, 537 U.S. 1046 (2002)); *H.W. Carter & Sons, Inc. v. William Carter Co.*, No. 95 Civ. 1274, 1995 WL 301351, at *3 (S.D.N.Y. May 16, 1995) (noting that the "attorney-client privilege does not extend to facts pertaining to the existence of an attorney-client relationship, the fact of consultation, or the dates and general nature of legal services performed").

There is case law to the effect that disclosure of an attorney's advice by one corporate employee to another does not necessarily waive the privilege if there is a genuine need for such disclosure, such as where the recipient has some responsibility for the area to which the advice relates. *See*, *e.g.*, *Strougo v. BEA Associates*, 199 F.R.D. 515, 519-20 (S.D.N.Y. 2001) ("although dissemination of privileged information to third parties generally waives attorney-client privilege, the distribution within a corporation of legal advice received from its counsel does not, by itself, vitiate the privilege"); *SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508, 518 (D.Conn.) (privileged communications will not lose "protection if an executive relays legal advice to another who shares responsibility for the subject matter underlying the consultation"), *appeal dismissed*, 534 F.2d 1031, 1032 (2d Cir. 1976)). This principle "follows from the recognition that since the decision-making power of the corporate client may be diffused among several employees, the dissemination of confidential communications to such persons does not defeat the privilege." *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 442 (S.D.N.Y. 1995).

In general, whether the dissemination of privileged communications to corporate employees vitiates the privilege is decided by applying a "need to know" standard: did the recipient need to know the content of the communication in order to perform her job effectively or to make informed decisions concerning, or affected by, the subject matter of the communication? *See*, *e.g.*, *Deel v. Bank of America, N.A.*, 227 F.R.D. 456, 460 (W.D.Va. 2005) ("A corporation does not waive its privilege when non-lawyer employees send or receive communications because corporate communications which are shared with those having need to know of the communications are confidential for purposes of the attorney-client privilege"); *Wrench LLC v. Taco Bell Corp.*, 212 F.R.D. 514, 517 (W.D.Mich. 2002) ("while corporate executives may share legal advice with

lower-level corporate employees without waiving the privilege, the privilege extends only to those employees with a 'need to know,' including those employees with general policymaking authority and those with specific authority for the subject matter of the legal advice"); *Andritz Sprout-Bauer, Inc. v. Beazer East, Inc.*, 174 F.R.D. 609, 633 (M.D.Pa. 1997) ("Communications between corporate counsel and company personnel ... retain their privileged status if the information is relayed to other employees of officers of the corporation on a need to know basis. Only when the communications are relayed to those who do not need the information to carry out their work or make effective decisions on the part of the company is the privilege lost").

"The 'need to know' must be analyzed from two perspectives: (1) the role in the corporation of the employee or agent who receives the communication; and (2) the nature of the communication, that is, whether it necessarily incorporates legal advice. To the extent that the recipient of the information is a policymaker generally or is responsible for the specific subject matter at issue in a way that depends upon legal advice, then the communication is more likely privileged." *Verschoth v. Time Warner Inc.*, No. 00CIV1339, 2001 WL 286763, at *2 (S.D.N.Y. Mar. 22, 2001) (observing that if an automobile manufacturer is attempting to remedy a design defect that has created legal liability, then the vice president for design and the engineer who will actually redesign the defective part will be among those to whom confidential legal communications can be made, but that "the autoworker on the assembly line has no need to be advised of the legal basis for a charge in production even though it affects the worker's routine and thus is within his or her general area of responsibility").

In this area, too, the burden rests upon the party claiming the privilege. "The burden is on the corporation asserting the privilege to show that it preserved the confidentiality of the

communication by limiting dissemination only to employees with a need to know." *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, No. 95 Civ. 4856, 1996 WL 474177, at *2 (S.D.N.Y. Aug. 21, 1996) (citing 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence, ¶ 503(b)[04] at 503-49 to 503-50 (1988)). *See also In re Philip Services Corp. Securities Litigation*, No. 98CIV0835, 2005 WL 2482494, at *1 (S.D.N.Y. Oct. 7, 2005) (parties asserting privilege "bear the burden of demonstrating that the opinion letters are privileged and that the privilege has not been waived"); *Denney v. Jenkens & Gilchrist*, 362 F.Supp.2d 407, 412 (S.D.N.Y. 2004) ("The party claiming the privilege has the burden of showing 'that the communications between client and attorney were made in confidence *and have been maintained in confidence*'") (quoting *In re Horowitz*, 482 F.2d 72, 81-84 (2d Cir. 1973)) (alteration in original); *Resolution Trust Corp. v. Massachusetts Mutual Life Ins. Co.*, 200 F.R.D. 183, 191 (W.D.N.Y. 2001) ("Just as the party seeking to assert a claim of privilege bears the burden of establishing the existence of the privilege, that same party has the burden of establishing nonwaiver") (quoting *Granite Partners v. Bear, Stearns & Co., Inc.*, 184 F.R.D. 49, 54 (S.D.N.Y. 1999)).

Here, I do not believe that Eldre has demonstrated that Davis needed to know that Eldre's attorneys had gone over the employee handbook and opined that the policies it contained were all in compliance with the law. Davis had no policymaking authority in this area, nor did she make decisions affecting employees' pay. Abelson could therefore simply have assured her that the policy in question was lawful and left it at that.

More to the point, though, even if Abelson thought that it was important for Davis to understand the basis for his assertion that Eldre's practices were lawful, he implicitly authorized

Davis to tell the complaining employee what Abelson had said.[3]  Davis–whose duties included "explain[ing] benefits and company rules [and] policies" to employees and acting as "a liaison between the employees and upper management if employees had questions or problems," Dkt. #154 Ex. G at 20–testified that she had gone "to Mr. Abelson ... with the employee's complaint" about his pay being docked.  *Id.* at 39.  She testified that she "sa[id] to Mr. Abelson that [Davis] d[id]n't recall seeing a policy like that before for a salaried employee," and that is when Abelson responded that "the handbook had been gone over by the company attorneys and that everything in it was legal."  Dkt. #161 Ex. A at 44, 45.

When asked why she had made that statement about not having seen such a policy before, Davis replied, "Well, I did have an angry employee on my hands."  She added that she "wanted to get an answer to have something to say to this employee to hopefully make them understand that this was company policy and, you know, that was it."  *Id.* at 45.

In short, then, Davis was faced with an employee who was angry about a particular pay policy, and she went to Abelson "to get an answer" so that she would "have something to say to [the] employee" in response to his complaint.  Under those circumstances, what Davis "needed to know" was what to tell the employee.  By telling Davis that Eldre's attorneys had vetted the employee handbook, Abelson in effect authorized her to pass that information on to the employee.  If Abelson had intended that she not repeat his statements to the employee, or that she give the employee a different answer than the one that Abelson had given Davis, one would certainly have

---

[3]Eldre does not appear to contend that Abelson, who was Eldre's Executive Vice President, lacked authority to waive the privilege.  *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985) ("the power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors").

expected him to tell her so. I therefore conclude that to the extent that Abelson's alleged statement to Davis contained privileged information, that privilege has been waived.[4]

## CONCLUSION

Defendant's motion *in limine* (Dkt. #152) is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
August 1, 2006.

---

[4]Defendant's motion *in limine* is based solely on the ground that Abelson's alleged statements to Davis were privileged, and that is the only issue that the Court decides in this Decision and Order. Any other issues concerning the admissibility or use of this evidence at trial will be addressed, as necessary, at trial.

I also note that in their response to defendant's motion, plaintiffs now contend that in January 2005, another Eldre officer, Lee Moss, told several Eldre employees who had asked him some questions about Eldre's pay policies that Eldre had "passed the handbook through company lawyers, and the lawyers said it was fine." Affidavit of Rita Langen-Lucko (Dkt. #162) ¶ 3. Plaintiffs contend that this also constituted a waiver of any attorney-client privilege.

On its face, defendant's motion is limited to "precluding the use of any testimony concerning conversations between Kathleen Davis and Arthur Abelson regarding legal advice or opinions from Defendant's attorneys ...," Dkt. #152, so there is no issue before me at this point concerning this alleged statement by Moss. If the statement was made as alleged by plaintiffs, however, it would certainly seem to waive attorney-client privilege as to its contents, and plaintiffs may inquire about it at trial.