UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

FREDRICK SCHOLTISEK, *on behalf of himself and all other employees similarly situated*,

          *Plaintiffs*,

v.

THE ELDRE CORPORATION,

          *Defendant.*

Civil Action No.
03-CV-6656L(F)

Hon. David Larimer

# PLAINTIFFS' MEMORANDUM OF LAW
# IN SUPPORT OF SUMMARY JUDGMENT

**STANLEY J. MATUSZ, ESQ.**
*Attorney for Plaintiffs*
161 Rutgers Street
Rochester, NY 14607
(585) 271-5460

Of counsel: Stanley J. Matusz, Esq.

**PRELIMINARY STATEMENT**

Plaintiffs submit this Memorandum of Law, the accompanying Affirmation of Stanley J. Matusz, Esq. sworn to October 24, 2007 ("Matusz Aff."), Affidavit of Fredrick Scholtisek, sworn to August 24, 2004 ("Scholtisek Aff."), the Exhibits attached thereto, and Plaintiffs' Rule 56 statement of undisputed facts, in support of Plaintiffs motion for summary judgment. Based on the undisputed facts, Eldre engaged in multiple practices that voided the "exempt" status of its salaried employees.

**PROCEDURAL BACKGROUND**

Fredrick Scholtisek (referred to herein as "Named Plaintiff" or "Scholtisek") filed this action against The Eldre Corporation, (referred to as "Eldre" or "Defendant") as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §216(b), and as a class action alleging violations of the New York State Labor Law. (Complaint ¶ 1). Plaintiffs allege that Eldre willfully maintained practices and policies of making impermissible deductions in the pay of employees who are paid on a "salary basis." (Complaint ¶¶ 27-30). These practices void the exempt status of Eldre's salaried employees.

This Court previously granted plaintiffs' motion for certification of an FLSA collective action and conditional class certification of plaintiffs' claims under the New York Labor Law. See, Scholtisek et al. v. Eldre, 229 F.R.D. 381 (W.D.N.Y. 2005). Forty-four (44) current and former employees executed consent forms indicating their affirmative desire to participate in both the federal (FLSA) and state (Labor Law) components of this action. Another fifty-two (52) individuals did not affirmatively

2

participate in the federal FLSA action, but remain eligible to participate in the state action.[1]

Plaintiffs now move for summary judgment on the grounds that there are no genuine issues of fact which warrant trial, and judgment in their favor should be rendered.

**FACTUAL BACKGROUND**

Former and current Eldre human resources managers and corporate officers have acknowledged that Eldre maintained the following practices and policies:

1. Eldre engaged in an actual practice of docking its salaried/exempt employees in partial day increments;

2. Eldre maintained an explicit employment policy directed at its exempt employees that created a significant likelihood of pay deductions;

3. Eldre engaged in an actual practice of instructing exempt employees to not report to work for certain days on account of "plant shutdowns" and then reducing the weekly pay of those same employees.

**A.     Eldre's Practice of Docking the Pay of Salaried Employees in Partial Day Increments**

Eldre confirmed that it had a longstanding policy of docking the salaries of its exempt employees in partial day increments, and that it was in effect from 1998 through a portion of 2004. (Davis EBT 34-35)[2]. Former HR Manager, Kathleen Davis, testified that exempt employees of Eldre were not paid for partial day absences that were not covered by sick or leave time. (Davis EBT 34-35). Ms. Davis confirmed this was a company policy. (Davis EBT 51, 52, 38, 45). Debra Kaufman, Eldre's current HR manager, verified that this practice of docking exempt employees continued until at least

---

[1] Forty-seven (47) persons executed "op-out" forms indicating that they were uninterested in participating in either the federal or state components of this action.

[2] References herein to "Davis EBT __" are to the August 2, 2005 deposition transcript of former Eldre Human Resources Manager, Kathleen Davis, relevant portions of which are attached to the accompanying Affirmation of Stanley J. Matusz, Esq. as Exhibit A.

3

mid to late 2004. (Kaufman EBT 81-82)[3]. Both Ms. Davis and Ms. Kaufman testified that salaried employees were made aware of this practice. (Davis EBT 51, 52; Kaufman EBT 88). Indeed, Ms. Kaufman was instructed to follow this policy by Ms. Davis. (Kaufman EBT 84).

The origins of the partial day docking of Eldre's salaried employees pre-dated the arrival of Ms. Davis in December of 1997. (Davis EBT 17). Eldre Corporate Officer, Thomas Giuliano, stated that it has been going on "as long as [he] can remember." (Giuliano EBT 98-99)[4]. Shortly after Ms. Davis' arrival in 1997 as Human Resources Manager, Ms. Davis received a complaint regarding this practice from a salaried employee whose pay was partially docked. Ms. Davis had never seen such a policy applied to a salaried employee in her long career in human resources, and she brought this complaint directly to the attention of Eldre Executive Vice President and corporate officer, Arthur Ableson. Ms. Davis testified as follows:

> A: I believe I had an employee get angry because their pay was docked. And I went to Mr. Ableson at the time with the employee's complaint…

Ms. Davis continued:

> A: I did say to Mr. Ableson that I don't recall seeing a policy like that before for a salaried employee.
>
> Q: You do recall. And did he respond to that remark?
>
> A: That's when he told me the handbook had been gone over by the company attorneys and that everything in it was legal.
>
> Q: Can I ask you why you made that statement to Mr. Ableson, that you had never seen it before?
>
> A: Because I hadn't seen it before.

---

[3] References herein to "Kaufman EBT __" are to the February 8, 2005 deposition transcript of Eldre Human Resources Manager, Debra Kaufman, relevant portions of which are attached to the accompanying Affirmation of Stanley J. Matusz, Esq. as Exhibit D.

[4] References herein to "Giuliano EBT __" are to the February 11, 2005 deposition transcript of Eldre corporate officer and Vice President of Finance, Thomas Giuliano, relevant portions of which are attached to the accompanying Affirmation of Stanley J. Matusz, Esq. as Exhibit B.

> Q: I need to ask you what was going through your mind when you asked him that.
>
> A: Well, I did have an angry employee on my hands.
>
> Q: Right.
>
> A: I wanted to get an answer to have something to say to this employee to hopefully make them understand that this was company policy and, you know, that was it.

(Davis EBT 41-42; 44-45). Despite this complaint, Eldre did nothing to correct this pay practice.

In the Fall of 1999, named plaintiff Frederick Scholtisek complained about the first of three instances where his salary was partially docked. (Scholtisek Aff. ¶¶ 3-9), Exs. B-E)[5]. He had left work early on a Friday to visit his son in Lake Placid, New York, and had obtained his supervisor's permission to do so. Mr. Scholtisek had worked about five hours on that specific day, and fifty-five (55) hours for the workweek. (Id.). Yet when he received his paycheck for the week, he found that the regular amount in his check had been reduced by the equivalent of four (4) hours of his regular pay rate. Mr. Scholtisek complained verbally to his supervisor and human resources, and actually memorialized his complaint in writing. (Scholtisek Aff. ¶¶ 5-7). His memo explained (correctly) that the partial day deduction was not consistent with his classification as a salaried employee. (Scholtisek Aff. ¶ 5). Despite his complaint, Eldre did nothing to correct this practice.

In fact, the actual practice continued into 2004 until a point when Ms. Davis' successor, Ms. Kaufman, was told by corporate officer Giuliano to discontinue the practice due to "possible legal problems." (Kaufman EBT 82). However, Eldre never

---

[5] References herein to "Scholtisek Aff. __" are to the accompanying Affidavit of Fredrick Scholtisek, dated August 24, 2004, and its attached exhibits.

5

communicated to its salaried employees that this practice was being ended. (Giuliano EBT 104-05).

In addition to confirmation of the existence of this practice from Eldre's current and former Human Resources Managers and its corporate officers, Eldre's payroll records show no less than seventy-seven (77) separate instances of partial day docking. (Matusz Aff. Ex. E)[6]. The actual occurrences are verified by comparing individual time cards with corresponding payroll data for the week worked. (Kaufman EBT 132-38). Eldre's current Human Resources manager examined the records and acknowledged no less than forty-eight (48) clear instances where an exempt employee reported to work on a day but was docked in a partial day increment. (Kaufman EBT 150-178).

No less than thirty-four (34) different salaried employees were actually docked in partial day increments. (Matusz Aff. ¶ 3). The docking also occurred without regard to position, title or salary. Various positions held by persons who were docked for partial days include, but are not limited to: estimators, accountants, shift managers, marketing personnel, sales staff, engineers, stamping supervisors, administrative assistants, quality assurance personnel, shipping supervisors, sales managers, and production control personnel. (Matusz Aff. ¶ 4).

### B. Eldre Maintained a Second Explicit Policy That Created a "Significant Likelihood of Deductions" For Its Salaried Workforce

Eldre also maintained an explicit written policy directed at its salaried employees that created a significant likelihood of unlawful pay deductions. Eldre maintained a written policy directed at its salaried employees that states the following:

> "An employee who has used up all sick, personal and vacation time and is absent for any reason, will not be paid for the day or days the employee is absent. If the employee is absent less than three (3) hours, in accordance with

---

[6] References herein to "Matusz Aff. __" are to the accompanying Affirmation of Stanley J. Matusz, Esq., dated October 24, 2007, and its attached exhibits.

>   the policy, there is no loss of pay.  Therefore, once absent for more than three (3) hours the employee cannot and will not be allowed to come to work.  The employee will not be paid for the entire day."

(Scholtisek Aff. Ex. F)(emphasis added).  This provision is set forth in the "Eldre Corporation Employee Handbook – Exempt Employees."  (Id.).  This policy clearly violates the FLSA because deductions from salary are not permitted for absences occasioned by the employer.  See, C.F.R. 541.118(a)(1).

Eldre Human Resources administrator, Kathleen Davis, confirmed this was, in fact, Eldre's policy during her tenure at the company.  (Davis EBT 57).  Like the first practice, Ms. Davis further testified that this 3-hour no report policy was in effect, and that she was made aware of it when she first joined Eldre.  (Davis EBT 57-58).  Her successor, Ms. Kaufman, confirmed the impact of this policy:

>   Q.  Can you explain what [this provision in the handbook] means?
>
>   A.  Just as it says.
>
>   Q.  Okay.  So if somebody misses three hours in the morning and doesn't have any time left, there is a standing order that they can't come to work?
>
>   A.  They should take the whole day off, yeah.
>
>   Q.  Okay.  And they're not paid for that day?
>
>   A.  Right.

(Kaufman EBT 95-96).  This policy was also communicated to Eldre employees.  (Kaufman EBT 96).  All Eldre exempt employees receive a copy of the handbook and are required to sign an acknowledgement form.  (Giuliano EBT 130-31).  Employees of Eldre verify that they were fully aware of this policy, understood its consequences, and that their behaviors were altered by the existence of this policy.  (Id.).

Unlike the partial day docking practice, Eldre's Human Resources Manager stated that it is not possible to determine how many times the "3 hour no report policy" impacted individual employees because their absences would just show up as a day not

7

present at work. (Kaufman EBT 96). That being said, data and records produced by Eldre show scores of instances where exempt employees were not paid for complete day absences where the reason listed was something other than sickness, illness or accident. (Matusz Aff. ¶ 11). Furthermore, there are also fifty-five (55) different occasions when Eldre docked an exempt employee's salary for a full day's absence when the employee indicated the absence was occasioned by sickness or accident, and where the absence was not designated as FMLA-qualifying. (Matusz Aff. ¶ 11). Those persons were prevented, by Eldre's policy, of showing up for work even if their condition improved or the accident rectified. At least twenty-nine (29) different Eldre exempt employees were actually docked pursuant to this practice. (Matusz Aff. ¶ 11).

### C.   Eldre's Practice of Not Paying Exempt Employees For Partial Week Shutdowns Mandated by the Company

Eldre also engaged in an actual practice of declaring partial week shutdowns and then docking the salaries of exempt employees for days the company instructed them not report to work. (Scholtisek Aff. ¶¶ 5-6, 9; Davis EBT 67; Moss EBT 51-52[7]; Kaufman EBT 109, 116, 139). The purpose of the shutdowns was for "maintenance and economic reasons." (Moss EBT 51). It was Eldre supervisors who determined who worked and who would not work. (Kaufman EBT 116). Such a practice violates the FLSA because an employer cannot dock a salaried employee's pay "for absences occasioned by the employer or by the operating requirements of the business." 29 C.F.R. 541.118(a)(1). "[I]f the employee is ready, willing, and able to work, deductions may not be made for time when work is not available." 29 C.F.R. 541.118(a)(1).

---

[7] References herein to "Moss EBT __" are to the February 25, 2005 deposition transcript of former Eldre Corporate Officer and Vice President, Lee Moss, relevant portions of which are attached to the accompanying Affirmation of Stanley J. Matusz, Esq. as Exhibit C.

8

Eldre had at least seven (7) such partial week shutdowns since 1998. (Matusz Aff. ¶ 12). During a shutdown the week of December 27, 2002, this practice adversely affected fourteen (14) exempt employees who were not paid for absences occasioned by Eldre. (Id.). Similar shutdowns occurred during the weeks of July 5, 2002, December 23, 2001, December 28, 2001, May 31, 2002, July 6, 2001, and August 15, 2003, and by virtue of the same, Eldre reduced the weekly salaries of twenty-one (21), nineteen (19), twenty-five (25), twenty-seven (27), seven (7), and six (6) Eldre exempt employees, respectively. (Id.). Again, this practice affected Eldre's exempt employees without regard to position, title or salary. (Id.).

**ARGUMENT**

**I.   STANDARD FOR SUMMARY JUDGEMENT**

Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Frankel v. Bally, Inc., 987 F.2d 86, 88 (2d Cir. 1993). As set forth below, plaintiffs are entitled to partial summary judgment on plaintiffs' claims that Eldre engaged in at least three separate practices that individually (and collectively) void the "exempt" status of its salaried employees.

**II.   ELDRE'S PRACTICES OF MAKING IMPERMISSIBLE DEDUCTIONS FROM ITS SALARIED EMPLOYEES VOIDS THE "EXEMPT" STATUS OF THOSE EMPLOYEES AND RENDERS ELDRE LIABLE FOR ALL UNPAID OVERTIME HOURS**

Under the FLSA, Eldre was/is required to compensate its employees at the rate of one and one-half times their regular rate of pay for every hour the employees work over forty hours in a week, 29 U.S.C. § 207(a)(1), except for those employees working in

"bona fide executive, administrative, or professional" positions.  29 U.S.C. § 213(a)(1).  In order to obtain the benefit of such an exemption, Eldre must demonstrate that the employee is compensated on a "salary basis."  See, 29 C.F.R. 541.118.  An employee is considered to be paid "on a salary basis" if:

> He regularly receives each period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is <u>not subject to reduction</u> because of variations in the quality or quantity of work performed.

29 C.F.R. 541.118(a)(emphasis added).  Thus, in order to qualify for exempt status, the employee "must receive his full salary for any week in which he performs any work."  Id.

An employee's compensation is "subject to reduction" when an employer like Eldre has <u>either</u>:  (1) "an actual practice of making such deductions" <u>or</u> (2) "an employment policy that creates a significant likelihood of such deductions."  <u>Auer v. Robbins</u>, 519 U.S. 452, 461 (1997); <u>Yourman v. Giuliani</u>, 229 F.3d 124, 129 (2d Cir. 2000).  In such instances, the employer "cannot claim that its employees are exempt from the overtime pay requirements."  <u>Yourman v. Giuliani</u>, 229 F.3d 124, 130 (2d Cir. 2000)(<u>quoting</u>, <u>Klem v. County of Santa Clara</u>, 208 F.3d 1085, 1091 (9th Cir. 2000)).

Eldre engaged in at least two (2) different actual practices of making such deductions, and maintained a third policy that created a significant likelihood of deductions.  The existence of these practices and policies is undisputed.  Accordingly, Eldre cannot claim that its salaried employees are exempt from overtime.

### A. Eldre is Liable for Unpaid Overtime Based on its Actual Practice of Making Partial Day Deductions From the Salaries of Exempt Employees

As the Second Circuit has held, "if an employee can be docked for fractions of a workday missed, then that employee is an hourly, not a salaried employee.'"  <u>Wright v. Aargo Security Services, Inc.</u>, 2001 WL 91705 (S.D.N.Y. 2001)(<u>quoting</u>, <u>Whitmore v.

Port Authority of New York & New Jersey, 907 F.2d 20, 21 (2d Cir. 1990)); Martin v. Malcolm Pirnie, Inc., 949 F.2d 611, 614-15 (2d Cir. 1991)(Employees paid under a system that subjects them, even theoretically, to docking for absences by the hour are not paid "on a salary basis."); Whetsel v. Network Property Services, Inc., 246 F.3d 897, 900 (7th Cir. 2001)("[T]he 'no docking rule' rule prohibits employers from deducting an employee's pay based on partial day absences and certain other forbidden reasons.").

That Eldre had a policy of making unlawful deductions from the salaries of its exempt employees is beyond dispute. Eldre's managers confirmed under oath the existence of this policy. Exempt Eldre employees have verified that Eldre maintained such a policy. This Court previously acknowledged that plaintiffs have "submitted evidence, in the form of his and other employees' affidavits and timecards, indicating that such deductions were widespread at Eldre**."** See, Scholtisek et al. v. Eldre, 229 F.R.D. 381 (W.D.N.Y. 2005)(citing, Lee A. Begy Aff. (Dkt. # 41 Att. 4); Herve Dauvergne (Dkt. # 41 Att. 5); Martin Melich Aff. (Dkt. # 41 Att. 6); Fredrick Scholtisek Aff. (Dkt. # 41 Atts. 7, 8); Matusz Aff. (Dkt. # 42) P4). They show that Eldre made these partial day deductions without regard to position, title or salary. (Matusz Aff. Ex. B and E). No less than thirty-four (34) different exempt Eldre employees were actually docked. (Matusz Aff. ¶ 8). The partial day docking of the salaries of its exempt employees occurred without regard to position, title or salary. Various positions held by persons who were docked for partial days include, but are not limited to: estimators, accountants, shift managers, marketing personnel, sales staff, stamping supervisors, administrative assistants, quality assurance personnel, shipping supervisors, sales managers, and production control personnel. (Matusz Aff. ¶ 8).

Eldre's impermissible partial day deductions over a significant period of time constitutes an "actual practice" as a matter of law. The pervasiveness of Eldre's practice with respect to its relatively small workforce (fifty (50) exempt employees) over a six (6)

11

year period greatly exceeds all reported decisions where Court's have found liability. See, e.g. Block v. City of Los Angles, 253 F.3d 410, 419 (9th Cir. 2001)(upholding finding of an "actual practice" of deductions where plaintiffs proved thirteen (13) improper suspensions over a six (6) year period); Klem v. Santa Clara County, 208 F.3d 1085, 1095 (9th Cir. 1999)(affirming district court's ruling that fifty-three (53) impermissible pay deductions among 5,300 exempt employees over a six (6) year period constituted an "actual practice."); Belton v. Sigmon, 101 F.Supp. 2d 435, 439 (W.D.Va. 1998)(finding an actual practice of deductions where employer made twenty-six (26) deductions over a period of a year and a half.); Cf, Yourman v. Giuliani, 229 F.3d 124 (2d Cir. 2000)(Second Circuit reversed finding of summary judgment in favor of the employer despite the fact that the lower court found 0.7% rate of actual deductions out of a workforce of 1,814.).

The pervasiveness of this practice alone voids the "exempt" status of Eldre's salaried employees. Summary judgment should be granted to Plaintiffs on the basis of this practice and unpaid overtime, liquidated damages and accrued interest awarded to all Eldre salaried employees.

### B. Eldre Maintained a Second Explicit Policy Creating a Significant Likelihood of Pay Deductions For Its Exempt Employees

Although the partial day docking practice detailed above warrants summary judgment in favor of plaintiffs, Eldre had other practices which also independently and collectively void the exempt status of its employees. Significantly, Eldre maintained a second policy that created a significant likelihood of deductions for its salaried employees. In pertinent part, this policy states the following:

> "An employee who has used up all sick, personal and vacation time and is absent for any reason, will not be paid for the day or days the employee is absent. If the employee is absent less than three (3) hours, in accordance with the policy, there is no loss of pay. Therefore, once absent for more than three (3)

<u>hours the employee cannot and will not be allowed to come to work. The employee will not be paid for the entire day.</u>"

(Scholtisek Aff. ¶ 4, Ex. B)(emphasis added). This provision is contained in the "Eldre Corporation Employee Handbook – Exempt Employees." (<u>Id.</u>). The latter portion of this policy destroys the salary basis by mandating full-days off without pay in instances where an employee is absent more than three (3) hours and has exhausted their sick, personal and vacation time.

This is an explicit policy directed at all of Eldre's salaried employees that creates a significant likelihood of impermissible pay deductions. As this Court has previously noted, "[t]his policy violates the regulatory provision that salaried employees' pay cannot be docked for absences occasioned by the employer." <u>Scholtisek et al. v. Eldre</u>, 229 F.R.D. 381 (W.D.N.Y. 2005)(<u>citing</u>, 29 C.F.R. § 541.602(a); <u>Baudin v. Courtesy Litho Arts, Inc.</u>, 24 F.Sup.2d 887, 890 (N.D. Ill. 1998)(employer "cannot dock a salaried employee's pay 'for absences occasioned by the employer'"); <u>Thomas v. County of Fairfax, Va.</u>, 803 F.Supp. 1142, 1148 (E.D.VA. 1992)("an FLSA-exempt executive's pay may not vary as a function of the number of hours worked"), <u>aff'd</u>, 16 F.3d 408 (4th Cir. 1994).

This policy was also communicated to Eldre employees. (Kaufman EBT 96). Employees of Eldre verify that they were fully aware of this policy, understood its consequences, and that their behaviors were altered by the existence of this policy. (<u>Id.</u>). Eldre's Human Resources Manager testified that it is not possible to determine how many times this policy influenced the behavior of individual employees because their absences would just show up as a day not present at work. (Kaufman EBT 96). That being said, data and records produced by Eldre show scores of instances where exempt employees were not paid for complete day absences where the reason listed was something other than sickness, illness or accident. (Matusz Aff. ¶ 11).

13

Furthermore, there are also fifty-five (55) different occasions when Eldre docked an exempt employee's salary for a full day's absence when the employee indicated the absence was occasioned by sickness or accident, and where the absence was not designated as FMLA-qualifying. (Matusz Aff. ¶ 11). Those persons were prevented, by Eldre's policy, of showing up for work even if their condition improved or the accident rectified. At least twenty-nine (29) different Eldre exempt employees were actually docked pursuant to this practice. (Matusz Aff. ¶ 11).

Under the salary basis test, the employer still fails to satisfy the test of its employment policy creates a "significant likelihood" of deductions. Auer, 519 U.S. at 461. "When the policy effectively communicates that deductions will be made in specified circumstances…the employer violates the FLSA." Smith v. Central Security Bureau, Inc., 231 F.Supp. 2d 455, 465 (W.D. Va. 2002). Here, Eldre's policy unambiguously makes clear the likelihood that impermissible deductions will be made. Eldre's policy, therefore, fails to meet the standard articulated in Auer. Accordingly, plaintiffs are entitled to summary judgment on the issue of liability; namely whether Eldre's salaried employees are exempt from the requirements of the FLSA as salaried basis positions. See, e.g., Smith v. Central Security Bureau, Inc., 231 F.Supp. 2d 455, 465 (W.D. Va. 2002)(granting summary judgment on the issue of liability in face of an unambiguous policy).

Eldre maintained an explicit policy that created a significant likelihood of deductions for its exempt employees. Based on this policy alone, Eldre cannot claim that its salaried employees are exempt from overtime, and all such employees denied overtime are entitled to the same, liquidated damages, and accrued interest.

**C. Eldre Had an Actual Practice of Not Paying Exempt Employees For Partial Week Shutdowns Mandated by the Company**

In addition to the two practices set forth above, Eldre also engaged in a practice of declaring partial week shutdowns and then docking the salaries of exempt employees for days the company instructed them not report to work. (Scholtisek Aff. ¶¶ 5-6, 9). This practice also violates the FLSA because an employer cannot dock a salaried employee's pay "for absences occasioned by the employer or by the operating requirements of the business." 29 C.F.R. § 541.118(a)(1). "[I]f the employee is ready, willing, and able to work, deductions may not be made for time when work is not available." 29 C.F.R. 541.118(a)(1).

Eldre had at least seven (7) such shutdowns since 1998. (Matusz Aff. ¶ 12). During a shutdown the week of December 27, 2002, this practice adversely affected fourteen (14) exempt employees who were not paid for absences occasioned by Eldre. Similar shutdowns occurred the weeks of July 5, 2002, December 23, 2001, December 28, 2001, May 31, 2002, July 6, 2001, and August 15, 2003, and by virtue of the same, Eldre reduced the weekly salaries of twenty-one (21), nineteen (19), twenty-five (25), twenty-seven (27), seven (7), and six (6) Eldre exempt employees, respectively. (Id.). This practice affected Eldre's exempt employees without regard to position, title or salary. (Id.).

Once again, this practice alone voids the "exempt" status of Eldre's salaried employees. Accordingly, summary judgment should be granted to plaintiffs on the basis of this practice, and overtime awarded to all Eldre salaried employees.

In conclusion, there is no question that Eldre had several company-wide policies that, whether considered independently or collectively, destroyed the salary basis for its exempt employees. Accordingly, summary judgment is warranted in favor of plaintiffs on their claims.

### III.    SUMMARY JUDGMENT IS ALSO WARRANTED ON PLAINTIFFS' STATE LAW CLAIMS

The New York Labor Law provides wage and overtime protections for employees similar to those required by the FLSA.  The New York Labor Law also requires employers to pay employees one and one-half times the regular rate for time worked in excess of forty hours during any workweek, unless they are "exempt."  12 N.Y.C.R.R. § 142-2.2.  Similar exemptions, as in the FLSA, exist for bona fide executives, administrators, or professionals.  12 N.Y.C.R.R. § 142-2.14 (c)(4)(i-iii).

The governing provisions on the administrative and executive exemptions, 12 N.Y.C.R.R § 142-2.14(b)(4)(i)(executive) § 142-2.14(b)(4)(ii)(administrative) require both certain specified duties, and the payment of "salary."[8]  Unlike the FLSA's regulations, New York's implementing regulations do not expressly define "salary."  Accordingly, Courts consult New York law regarding statutory construction to determine the meaning of "salary".  See, Travelers Ins. Co. v. Carpenter, 411 F.3d 323, 333 (2d Cir. 2005)(applying Vermont law with regard to statutory construction of Vermont provision); Torres v. Gristede's Operating Corp., 2006 U.S. Dist. LEXIS 74039 *41 (S.D.N.Y. 2006)(applying New York law with regard to statutory construction of New York Labor Law provision on "salary").  The New York Court of Appeals explained that this analysis begins with the language of the statute.  In Orens v. Novello, 99 N.Y.2d 180, 185, 753 N.Y.S.2d 427 (2002).   The court stated:

> If the terms are clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used . . . . In cases where the term at

---

[8]    Unlike the executive and administrative exemptions, the New York regulations impose no salary requirement for "professional" employees.  See, 12 N.Y.C.R.R. § 142-2.14(c)(4)(iii); Scholtisek v. Eldre Corp., 229 F.R.D. 381, 392 n.7 (W.D.N.Y. 2005); Bongat v. Fairview Nursing Care Ctr., Inc. 341 F.Supp. 2d (E.D.N.Y. 2004); Davis v. Lenox Hill Hosp., 2004 U.S. Dist. LEXIS 17284 at *1 (S.D.N.Y. 2004); Dingwall v. Frieman Fisher Assocs., 3 F. Supp. 2d (N.D.N.Y. 1998).

>issue does not have a controlling statutory definition, courts should construe the term using its usual and commonly understood meaning.

Id. at 185-85.

The New York Court of Appeals looked to dictionary definitions for assistance. Id.(citing, Merriam-Webster's Collegiate Dictionary and Black's Law Dictionary).  Using this same process, federal courts have ascertained the meaning of the term "salary" under the New York Labor Law.  See, Torres v. Gristede's Operating Corp., 2006 U.S. Dist. LEXIS 74039 *41 (S.D.N.Y. 2006)(utilizing Webster's Third New International Dictionary 2003 and Black's Law Dictionary 1364 (8th ed. 2004), to ascertain the meaning of the term "salary" under the New York Labor Law).   Webster defines "salary" as "fixed compensation paid regularly (as by the year, quarter, month, or week) for services."  Id. at *42.  Black's Law Dictionary defines "salary" as "an agreed compensation for services - especially professional or semiprofessional services - usually paid at regular intervals on a yearly basis, as distinguished from an hourly basis." Id. at *42-43.

By definition, "'salary' means receipt of fixed, regular compensation (i.e., not subject to weekly variation by hours worked)," and that employers "must satisfy both a 'duties' test and 'salary' test" in order to establish the administrative and executive exemptions under New York Law.  Id. at *42.

In the instant case, Eldre did not meet the salary test because they clearly subjected their employees to variations in their compensation based on the hours worked and quantity of work performed.  Accordingly, Eldre also cannot claim that its salaried employees are exempt from overtime under the New York Labor, and all employees denied overtime are entitled to the same.

## IV. ELDRE ENGAGED IN WILLFUL VIOLATIONS OF THE FLSA

The FLSA allows a three-year limitations period for "a cause of action arriving out of a willful violation." 29 U.S.C. § 255(a). The standard, as enunciated by the Supreme Court, is that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." <u>McLaughlin v. Richland Shoe Co.</u>, 486 U.S. 128, 133 (1988).

Here, there is evidence of both actual knowledge and reckless disregard. In terms of actual knowledge, liability is established by the fact that at least two employees complained about the lawfulness of this practice, and that Eldre's human resources personnel and corporate officers were made aware of it. <u>See</u>, <u>Chao v. A-One Medical Services, Inc.</u>, 346 F.3d 908-918-19 (9th Cir. 2003)(willfulness found based on undisputed testimony that former employees complained of practice). Indeed, named plaintiff Scholtisek protested this policy in writing, both to Human Resources and his direct supervisors.

At a minimum, there is overwhelming proof that Eldre "recklessly disregarded the possibility" that it was violating the FLSA by making these deductions. <u>See</u>, <u>Herman v. RSR Security Services Ltd.</u>, 172 F.3d 132, 141-42 (2d Cir. 1999)(finding reckless disregard for possibility that employer was violating the FLSA).

Accordingly, a three-year statute of limitations applies to the FLSA claims in this case.

## V. PLAINTIFFS MUST BE AWARDED LIQUIDATED DAMAGES

Section 216(b) of the FLSA provides that an employer who fails to compensate employees in accordance with § 207 "shall be liable to the ... employees affected in the amount of their ... unpaid overtime compensation ... and in an additional equal amount

18

as liquidated damages." 29 U.S.C. § 216(b).  Under 29 U.S.C. § 260, however, "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any [lesser] amount thereof..." Brock v. Superior Care, Inc., 840 F.2d 1054, 1063 (2d Cir. 1988).   The employer bears the burden of establishing that it meets this standard.  Brock v. Wilamowsky, 833 F.2d 11, 19 (2d Cir. 1987).  The burden on the employer "is a difficult one to meet, however, and double damages are the norm, single damages the exception." Reich, 121 F.3d 58 at 70.  "A finding of good faith is plainly inconsistent with a finding of willfulness." Chao v. A-One Medical Services, Inc., 346 F.3d 908-918-19 (9th Cir. 2003).

In the instant case, and as described in POINT IV, *infra*, Eldre was on actual notice that it was violating the requirements of the FLSA.  However, it made no effort to correct its practices.  Therefore, liquidated damages must be awarded to plaintiffs.

## CONCLUSION

For the forgoing reasons, plaintiffs respectfully request that this Court issue an Order granting summary judgment in favor of plaintiffs, ordering an accounting of all unpaid overtime, liquidated damages, accrued interest, ordering payment of plaintiffs' attorneys' fees and costs, and for such other relief as this Court deems just and proper.

Dated:  October 25, 2007

By: /s/Stanley J. Matusz
Stanley J. Matusz, Esq.
*Attorney for Plaintiffs*
161 Rutgers Street
Rochester, New York 14607
Telephone:  (585) 271-5460