FREDERICK SCHOLTISEK, *ON BEHALF OF HIMSELF AND ALL OTHER EMPLOYEES SIMILARLY SITUATED*,

PLAINTIFFS,

v.

THE ELDRE CORPORATION,

DEFENDANT.

MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

CIVIL ACTION NO.: 03-CV-6656L(F)

## PRELIMINARY STATEMENT

On December 23, 2003, Plaintiff Scholtisek commenced this action by filing a complaint in the U.S. District Court for the Western District of New York. *See* Docket No. 1. In the Complaint, Scholtisek claims that his former employer, The Eldre Corporation ("Eldre"), violated the Fair Labor Standards Act (FLSA) and New York State Labor Law by making impermissible deductions from his salary, thus destroying his exemption from the obligation to pay overtime. Eldre contends, among other things, that Scholtisek and the class members were properly compensated and that they were exempt employees under federal and/or state law.

Plaintiffs have now moved for summary judgment, claiming that Eldre has a policy and/or practice of making impermissible deductions from the salaries of exempt employees, which they contend entitles them to overtime. Eldre cross-moves for summary judgment. Although there are genuine issues of material fact regarding whether such a policy and/or practice ever existed, which require denial of Plaintiffs' motion, Eldre is entitled to judgment as a matter of law for a variety of reasons. (The Court granted permission for this Memorandum to exceed the Local Rule limit of 25 pages.)

First, several plaintiffs' FLSA claims must be dismissed. Stephanie Wright was specifically excluded from the class pursuant to stipulation, which was so ordered by the Court. Accordingly, she must be dismissed from the case. Seventeen (17) plaintiffs filed their consents to participate in the FLSA portion of this case more than three (3) years after they left employment at Eldre and/or were no longer exempt employees. Under any circumstances, their FLSA claims are time barred. Nine (9) additional plaintiffs filed their consents to participate in the FLSA portion of this case more than two (2) years after they left employment at Eldre. Absent Plaintiffs proving willfulness, their FLSA claims are time barred.

With respect to the claim of willfulness and/or lack of good faith, at the very least, there are genuine issues of material fact. As discussed below, however, the information presented by Plaintiffs in support of their allegation of willfulness would not, even if true, support a finding of willfulness and therefore Eldre is entitled to summary judgment on that issue. Moreover, the good faith issue, which relates to liquidated damages, is not ripe for adjudication at this time in any event, as the Court has not yet determined whether a violation has occurred.

Additionally, Plaintiffs' have not established a violation of the FLSA as a matter of law. More particularly, Plaintiffs' motion is based primarily, if not solely, on Eldre's alleged violation of the "salary basis" test contained in the regulations promulgated under the Fair Labor Standards Act. Plaintiffs purport to identify three types of violations concerning the salary basis test: partial day deductions, the "3 hour rule" in Eldre's Employee Handbook, and alleged inappropriate plant shutdowns. There are genuine issues of fact with respect to each of these contentions.

Plaintiffs purport to identify seventy-seven (77) instances of partial day deductions. However, the evidence presented is simply time card evidence, which does not provide the complete picture. While the time cards help indicate whether the individual involved was present or absent from work – although there are genuine issues of material fact raised about that – one needs to review payroll records to determine whether and to what extent employees were docked any pay, if at all. Then, because the law does not prohibit all deductions from salaried employees' pay, one would have to determine the amount and nature of the deductions. Here, Plaintiffs have not presented the evidence needed to make these determinations and therefore have not proved that they are entitled to judgment as a matter of law.

Moreover, as fully documented in Eldre's Response to Plaintiffs' Local Rule 56.1 Statement (¶ 4), the vast majority of the alleged partial day deductions are nothing of the kind:

- Some of the instances claimed do not even involve members of the class and in fact relate to non-exempt employees, who are not at issue in this case;

- One of the instances involves a salaried employee in the final week of her employment, which is an exception under the applicable regulations;

- Some instances involve entire work weeks where the individual did not work at all, but used some leave time to cover their absence, which is also an exception under the applicable regulations;

- Many of the alleged partial day deductions are actually full day absences where an individual used ½ day of leave time to cover part of that full day absence;

- In other instances, employees had leave time available and could have received their full salary, but they chose not to use that leave time; and

- Finally, as documented in Eldre's submissions, some of the claimed partial day deductions involve situations where employees received their full salary for the week and/or at least as much pay as they were entitled to receive, and thus are not docking or deduction instances anyway.

Based on this information, genuine issues of material fact regarding the 77 claimed partial day deductions exist.

Plaintiffs' reliance on the "3 hour rule" is also misplaced, as there is no evidence whatsoever that such rule was ever enforced. Indeed, all of the evidence adduced during discovery shows that this particular provision in Eldre's Employee Handbook has never been followed by employees nor enforced by Eldre. Thus, there was neither a significant likelihood that a deduction in salary would occur because of this rule, nor an actual practice of enforcing this rule.

Finally, Plaintiffs' present inadmissible evidence (an attorney affidavit) to support alleged plant shutdowns. In any event, the evidence is that Eldre's plant would never completely shut down, and any partial shutdown would typically last a full week, which would not implicate the salary basis test. Moreover, the evidence is conflicting as to whether or not salaried employees were ever prohibited from coming to work during any partial plant shutdown. Therefore, there are genuine issues of fact as to the nature and extent of Eldre's alleged plant shutdowns, which preclude summary judgment on this ground.

Even if the above-referenced genuine issues of fact were not present, Plaintiffs would not be entitled to summary judgment. To the extent that a trier of fact determines or the Court concludes that a few class members suffered an impermissible deduction in pay, Eldre has promised to reimburse the employees for those impermissible deductions and to take all steps necessary to comply with the FLSA in the future. Giuliano Decl., ¶ 72. This entitles Eldre to a "window of correction" under the salary basis test and precludes Plaintiffs' claim for overtime under the FLSA. As discussed below, this in fact entitles Eldre to summary judgment with respect to the Plaintiffs' claims.

With respect to Plaintiffs' claims under the New York Labor Law, the salary basis test upon which Plaintiffs rely simply does not exist under New York Law, as this Court has already determined. *See Scholtisek v. The Eldre CorpI*, 229 F.R.D. 381, 391-392 (W.D.N.Y. 2005). Eldre cannot violate that which does not exist. Finally, even if the salary basis test existed under New York law, Eldre would still be entitled to summary judgment for the same reasons it is entitled to summary judgment with respect to Plaintiffs' FLSA claim, i.e., the "window of correction." Plaintiffs cannot contend that the salary basis test is somehow implicit in the New York Labor Law and then contend that the "window of correction" that is part of the salary basis regulations is not available.

Moreover, with respect to numerous class members who qualify as "professionals" under New York law, Eldre would be entitled to summary judgment, even if the Court determined that the salary basis test applies in New York and the window of correction was for some reason unavailable. While New York requires a "salary" for exempt executives and administrators, there is no salary requirement of any kind for professionals.

Accordingly, Plaintiffs' Motion for Summary Judgment should be denied in its entirety and Defendant's Cross-Motion for Summary Judgment should be granted.

### STATEMENT OF FACTS

The undisputed material facts pertinent to Eldre's Cross-Motion for Summary Judgment are set forth in the Declarations submitted in support of its Cross-Motion, Eldre's Local Rule 56.1 Statement of Undisputed Material Facts, and in the documents and testimony included in Eldre's Appendix. Those submissions also contain the factual information demonstrating that genuine issues of material fact exist with respect to the grounds raised in Plaintiffs' Motion for Summary Judgment. These facts will be discussed within the points to which they pertain.

<u>**ARGUMENT**</u>

**I.      Summary Judgment Standards**

Summary judgment is appropriate only when the moving party demonstrates that "there is no genuine as to any issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, must show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact is present if the fact will "affect the outcome of the suit under the governing law" and the supporting evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *James v. DeGrandis*, 138 F.Supp.2d 402, 413 (W.D.N.Y. 2001).

In evaluating a motion for summary judgment, the judge's function is not to weigh the evidence and determine the truth of the matter; rather, the judge's role is "to determine whether there does indeed exist a genuine issue for trial." *Anderson v. Liberty Lobby, Inc,* 477 U.S. 242, 248-249 (1986). The Court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. *See Eastway Constr. Corp. v. New York,* 762 F.2d 243, 249 (2d Cir. 1985).

**II.      Many of the Opt In Plaintiffs' FLSA Claims Must be Dismissed**

On February 5, 2005, this Court conditionally certified a collective of present and former exempt employees of Eldre for the FLSA portion of this case, and also certified a class under FRCP 23 for Plaintiffs' New York State Labor Law claims. *See Scholtisek v. The Eldre Corp.*, 229 F.R.D. 381 (W.D.N.Y. 2005) ("*Scholtisek I*").

During discovery, as part of Eldre's Response to Plaintiffs' First Set of Interrogatories, Eldre provided a list of exempt employees with dates of hire and dates of termination, which was downloaded from Eldre's personnel records. *See* Eldre Exh. B. Excluded from this list of exempt employees are a few members of Eldre's management and some members of Eldre's HR/Payroll department. The parties stipulated that these eight (8) individuals would not be part of the FLSA collective nor the New York Labor Law class action. *See* Stipulation and Order (Eldre Exh. C).

In total, forty-four (44) individuals opted into the FLSA portion of this case. *See* Dkt. Nos. 5-7, 44-46, 53-63, 69-73, 76-99. These individuals are also within the Rule 23 class for New York Labor Law claims. One of the individuals who opted into the FLSA portion of this case is Stephanie Wright (Dkt. No. 84), who was one of the eight individuals excluded by stipulation and order. *See* Exh. C.

Eldre Exhibit E is a summary exhibit listing the putative class members and whether they opted into the FLSA claim, did nothing and therefore are in the New York Labor Law claim, or opted out of this case altogether. This exhibit also lists the date of filing of the consents, which is important for statute of limitations purposes.

### A.    *Stephanie Wright*

As noted above, the parties stipulated and the Court ordered that Ms. Wright be excluded from this case, both for purposes of the FLSA collective action and the Rule 23 class action. Accordingly, her consent form and her claim should be dismissed.

**B.      Three Year Statute of Limitations Under the FLSA**

Generally, the statute of limitations for FLSA claims is two years.  29 U.S.C. § 255(a).

However, if the plaintiff(s) prove that the alleged violation was willful, a three-year period

applies.  *Id.*  This is the maximum period that can be applied under the FLSA.

Importantly, in an FLSA collective action such as this, an employee's action

commences, for purposes of the statute of limitations, when he or she files a written consent to

join the action.  29 U.S.C. § 256(b); *Salazar v. Brown*, 1996 U.S. Dist. LEXIS 18113, *32

(W.D.Mich. Apr. 10, 1996).

Here, the following opt in plaintiffs filed their consents more than three years after their

employment at Eldre terminated:

        a.       Herve Dauvergne
        b.       Stephen Davis
        c.       Gary E. Del Regno
        d.       Sarah Devivi
        e.       Bradley Fisher
        f.       Ronald B. Gostomski
        g.       Cynthia Harding
        h.       Brian Kelly
        i.       Carol Lucisano
        j.       Laura Macomber
        k.       James Nemo
        l.       Steven L. Ott
        m.       Michael Rathbun
        n.       Theresa Sanger
        o.       John Willis

Additionally, Robert Compson held an exempt job position at Eldre between June 27,

1997 and January 30, 1999, at which time he became non-exempt.  Giuliano Decl., ¶ 13; Exhs.

B, E, Q.  Mr. Compson's consent was filed more than three years after he ceased being classified

as an exempt employee by Eldre.  *See* Dkt. No. 79 (filed April 18, 2005).

John Lundberg was treated as an exempt employee by Eldre until September 28, 2001, at which time he switched to non-exempt status. Giuliano Decl., ¶ 19; Exhs. E, P (p. 83), R. Mr. Lundberg's consent form was filed more than three years after he ceased being classified as exempt by Eldre. *See* Dkt. No. 54 (filed January 14, 2005).

Accordingly, Eldre is entitled to summary judgment concerning the FLSA claims of each of these individual plaintiffs. *See Tum v. Barber Foods, Inc.*, 2002 U.S. Dist. LEXIS 1064, *18 (D.Me. Jan. 23, 2002) (summary judgment granted with respect to claims of two former employees who filed consents more than three years after their termination dates), *aff'd*, 331 F.3d 1 (1st Cir. 2003).

### C.    *Two Year Statute of Limitations under the FLSA*

The following opt-in plaintiffs filed their consents more than two years after their employment at Eldre terminated:

        a.      Lee A. Begy
        b.      Edward Compson
        c.      Robert Flight
        d.      William McBride
        e.      Martin Melich
        f.      David Muscato
        g.      Kevin O'Neill
        h.      Victor T. Raguso
        i.      Frederick Scholtisek

If the two-year (non-willful) statute of limitations applies, Eldre is also entitled to summary judgment with respect to the FLSA claims of these individuals. *See Bonilla v. Las Vegas Cigar Co.*, 61 F. Supp. 2d 1129, 1139-1140 (D.Nev. 1999) ("Because these Plaintiffs have not filed a consent to suit form within two years of the last alleged violation, they claims are barred by the statute of limitations."); *Groshek v. Babcock & Wilcox Co.*, 425 F. Supp. 232, 233-234 (E.D.Wis. 1977) ("Thus, the written consents of the 119 co-employees of the plaintiff were filed after the

statute of limitations had run and are time barred.") (citing *King v. J.C. Penney Co*., 58 F.R.D. 649 (N.D.Ga. 1973)).

Plaintiffs cannot dispute the termination dates and consent dates, but they have moved for summary judgment with respect to the willfulness issue. At the very least, there is a genuine issue of material fact on the question of willfulness and/or good faith, which would require denial of Plaintiffs' Motion for Summary Judgment on this ground. However, a closer look at Plaintiffs' argument and the undisputed facts of this case establishes that Eldre is entitled to judgment as a matter of law on the willfulness issue, and the application of the two-year statute of limitations to the Plaintiffs listed above.

The burden of proof on the issue of willfulness rests with the plaintiff in an FLSA case. 29 U.S.C. § 255(a); *McLaughlin v. Richland Shoe Co*., 486 U.S. 128 (1988). Willfulness in this context is knowledge or reckless disregard for whether certain conduct is prohibited by the statute. *McLaughlin*, 486 U.S. at 133. The reckless standard is high, as it is not enough to show that the employer acted unreasonably. *Id*. at 135 n.13. "Negligence or an incorrect assumption that a pay plan complies with the FLSA do not meet the criteria for a willful violation of the FLSA." *Terwilliger v. Home of Hope, Inc.*, 21 F. Supp. 2d 1305, 1308 (N.D.Okla. 1998) (citing *McLaughlin*, 486 U.S. at 133). It is not enough for the plaintiffs to show that the employer knew that the FLSA was "in the picture." *McLaughlin*, 486 U.S. at 132-133.

The Plaintiffs' sole evidence of willfulness is the assertion that "at least two employees complained about the lawfulness of this practice." Pl. Memo of Law, p. 18. The "practice" referenced appears to be partial day docking of salaried employees,[1] and the reference to two

---

[1] Eldre contends that a genuine issue of material fact exists as to whether there was any policy or practice of partial day deductions. *See* Eldre Resp. to Pl. Local Rule 56.1 Statement, ¶¶ 1, 3-5.

complaints appears to be a reference to an unnamed employee who complained about partial day docking to Kathleen Davis and Mr. Scholtisek's memo to his supervisor in November 1999. *See* Pl. Local Rule 56.1 Statement, ¶ 2. In contrast to this evidence, multiple witnesses testified that prior to this lawsuit, no Eldre exempt employees complained about any of the matters alleged to be unlawful by Plaintiffs. *See* Kaufman Dep., pp. 118:11-125, 119:6-9, 20-24, 120:2-13; Erdle Dep., pp. 27:13-24, 39:24-40:6, 47:11-14; Giuliano Dep., pp. 64:2-14, 66:23-67:4, 70:20-71:2, 72:2-6, 73:9-23, 109:10-17, 134:10-14, 136:5-14. However, the undisputed evidence shows that neither of these alleged complaints turn out to be about partial day docking at all!

*Alleged Complaint #1.* Ms. Davis testifed that a salaried employee complained about getting his/her salary docked sometime in the late 1990's, at which time she approached Executive Vice President Arthur Abelson to discuss the matter. Davis Dep., pp. 39:16-40:12. Mr. Abelson passed away (Erdle Dep., pp. 57:22-58:2) so he cannot respond to this allegation.

However, Ms. Davis also testified that she could not recall who the person was. Davis Dep., pp. 50:17-51:2; 82:19-83:2. Moreover, when first discussing this alleged "complaint," Ms. Davis made clear that the conversation with Mr. Abelson centered around the Employee Handbook and its alleged review by attorneys. Davis Dep., pp. 39:16-40:12; 63:23-64:8. Indeed, this particular conversation specifically about the Employee Handbook was the subject of Eldre's Motion in Limine. *See Scholtisek v. The Eldre Corp.*, 441 F. Supp. 2d 459 (W.D.N.Y. 2006).[2] Ultimately, however, Ms. Davis admitted that the Employee Handbook did not even

---

[2] Plaintiffs seek to use this statement by Arthur Abelson that the handbook had been reviewed by the company's attorneys and "everything in it was legal," as evidence of willfulness and/or lack of good faith. While it denied Eldre's Motion in Limine, the Court noted that the statement at issue was ambiguous and subject to multiple interpretations. 441 F. Supp. 2d at 462. Thus, to the extent Plaintiffs rely upon this statement, a genuine issue of material fact is clearly presented.

contain a provision requiring partial day docking.  Davis Dep., pp. 92:11-95:6; 100:19-101:9.

Moreover, Eldre has separate handbooks for exempt and non-exempt employees – Whistler

Dep., p. 14:4-7; Giuliano Dep., p. 84:3-9; Kaufman Dep., p. 72:8-16; Giuliano Decl., ¶ 9 -- so it

is not at all clear whether Ms. Davis accurately recalls the events from more than five years ago,

particularly given her admission that the alleged partial day docking policy is not even in the

exempt handbook.  This further raises an issue of fact as to whether the employee who allegedly

complained (whom Ms. Davis cannot remember) was even a salaried employee and/or whether

the complaint was even about partial day docking.

     *Alleged Complaint #2.*  Mr. Scholtisek alleges that he complained to his supervisor (Rick

Whistler) about being docked a partial day when he visited his son in Lake Placid on a Friday.

Scholtisek Affd., ¶¶ 3-5.  Whether or not Mr. Scholtisek took a partial day off on November 19,

1999 – which is itself a genuine issue of material fact (see below) – his memorandum to Mr.

Whistler did not raise a partial day docking issue.  Rather, that memorandum (Eldre Exhibit S)

refers to "a pay deduction for the Friday off to go to Lake Placid" and further attempts to justify

non-deduction from his pay by stating that he "put in 9 extra hours that week."  Nine hours is the

standard full work day for Eldre exempt employees.  Scholtisek Dep., p. 68:16-18.  Thus, Mr.

Scholtisek's memorandum does not raise the issue of partial day deductions at all, but rather

complains about a full day issue.  *See* Scholtisek Dep., p. 5-10 (Scholtisek admitting that memo

does not mention a partial day issue).

     Presumably, Mr. Scholtisek will argue that his time card shows he was present for part of

the day because there is an "X" that day.  However, he acknowledged that he would often note

on the time card if he were only there part of the day  (Scholtisek Dep., 90:2-8, 17-20) and he

also had trouble at his deposition ascertaining whether particular entries (in his own writing)

were full or part day absences. Scholtisek Dep., pp. 124:3-126:6. Moreover, it was not uncommon for employees to fill out their time cards in advance, only to have to make changes later on. Begy Dep., pp. 20:16-22, 44:8-9, 18-24; 45:8-22. Thus, the fact that there is an "X" on the Friday at issue but also a notation regarding a possible absence simply raises an issue of fact, particularly when considered in the context of Mr. Scholtisek's memo, which does not raise a partial day docking issue.

In any event, Mr. Scholtisek admitted that he was not "always consistent" in marking down full or partial day absences. Scholtisek Dep., p. 88:20-23. This further casts doubt on the content of the time card at issue, which he filled out and claims is a partial day absence, but which his memo a few days later indicates was a full day absence.

Therefore, contrary to Plaintiffs' assertions, neither of these alleged "complaints" appears to have even raised the partial day docking issue. At the very least, there is a genuine issue of material fact on this particular point, and therefore Plaintiffs' Motion for Summary Judgment on the issue of willfulness and/or good faith should be denied. *See Bankston v. Illinois*, 60 F.3d 1249, 1253 (7th Cir. 1995) ("It is the jury's province to decide which limitations period, two or three years, applies in light of the plaintiffs' evidence that the defendants acted willfully."); *cf. Cooke v. General Dynamics Corp.*, 993 F. Supp. 56, 65-66 (D.Conn. 1997) ("Obviously, a finding of a willful violation must be predicated on a finding of a violation…. Therefore, at this juncture, the court must defer ruling on the issue of willfulness until factual determinations have been made as to whether defendant can carry its burden of proving that the plaintiffs are exempt from the overtime pay requirements.").

However, even though there is a genuine issue of material fact as to whether the two alleged complaints even raised the partial day docking issue, the Court would be justified in granting summary judgment to Eldre on the issue of willfulness, as such complaints would not be sufficient for a finding of willfulness, particularly given their vague and ambiguous nature as discussed above. In *Claeys v. Gandalf Ltd.*, 303 F. Supp. 2d 890, 893-894 (S.D.Ohio 2004), the court rejected the notion that alleged FLSA violations were willful because the plaintiff had discussed the matter with his employer and the employer had taken the position that he was an exempt employee. The court specifically noted that this evidence did not prove willfulness, particularly when the company maintained that the plaintiffs in that case were exempt employees. *See also Brock v. The Claridge Hotel & Casino*, 711 F. Supp. 779, 782-783 (D.N.J. 1989) (court applied two-year statute of limitations, noting testimony that no employee had ever complained about salary issue "was persuasive to us of a lack of willfulness").

Finally, in *Reeves v. Alliant Techsystems, Inc.*, 77 F. Supp. 2d 242, 250 (D.RI. 1999), a partial day deduction case where unlike here such deductions were ***admitted***, the court declined to find willfulness: "Although Alliant admittedly imposed improper deductions against certain exempt employees during the relevant time frame, the court cannot infer from the evidence presented in the instant case that Alliant's alleged FLSA violations were 'willful'".

Based on the foregoing, therefore, there is no basis to grant summary judgment to the Plaintiffs on the issue of willfulness and/or good faith. Indeed, the evidence supports granting summary judgment to Eldre on the issue of willfulness and applying the two-year statute of limitations, which would bar the FLSA claims of the nine individuals listed above. With respect to the issue of good faith, which relates to liquidated damages, any determination would be premature, as there has been no determination of damages at his juncture.

## III.    Plaintiffs' Motion for Summary Judgment on the FLSA Claims Must be Denied

In this case, Scholtisek's claims rest entirely on his position concerning certain alleged deductions, particularly partial day deductions, from the salary of employees that Eldre Corporation treats as exempt from overtime requirements.  The alleged illegality of such deductions is based upon the "salary basis" test under the FLSA.  Plaintiffs claim that the alleged FLSA violation voids their exempt status and entitles them to overtime.  *See* Pl. Memo of Law, pp. 2 ("These practices void the exempt status of Eldre's salaried employees."); 12 (requesting summary judgment and an award of "unpaid overtime…."); 14 (same); 17 (same); 19 (same).[3]

Under the FLSA white collar exemptions, certain employees are exempt from overtime if they are working in "bona fide executive, administrative, or professional positions."  29 U.S.C. § 213(a)(1).  In order to obtain the benefit of this exemption, an employer must demonstrate that the employee meets both a "duties test," *see* 29 C.F.R. § 541.1, and a "salary basis test," *see* 29 C.F.R. § 541.118.[4]  An employee is paid on a "salary basis" under federal law if

---

[3]  Notably, this Court rejected Eldre's claim at the conditional certification stage that the exemption issues presented in this case, particularly the need to litigate the duties of various exempt employees at Eldre, precluded any commonality among the plaintiffs.  The Court did so in part because "plaintiff does not allege that he should have been paid overtime, or that he was improperly classified as exempt, but that he and other exempt employees' pay should not have been docked for partial-day absences or shutdowns."  *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 389 (W.D.N.Y. 2005).  However, Plaintiffs clearly seek overtime pay in this case, claiming that their exemption has been lost.  Therefore, Eldre will likely file a Motion for Decertification in the future.  *See* FRCP 23(c)(1)(C) ("An order under Rule 23(c)(1) may be altered or amended before final judgment."); *Scholtisek*, 229 F.R.D. at 390 ("If discovery reveals that some employees are not similarly situated, the class can be redefined or decertified.").

[4]  Citations are made to the regulations in effect at the time this lawsuit was filed.  In 2004, the Department of Labor issued a new set of regulations, which updated the FLSA white collar exemptions.  69 Fed. Reg. 22,260 (2004).  The new salary basis regulation is contained in 29 C.F.R. ¶ 541.603.

> he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quantity and quality of the work performed.

29 C.F.R. § 541.118(a).

Under this standard, a salaried employee's pay may be docked if he or she violates safety rules of major significance. 29 C.F.R. § 541.118(a)(5). An employer may also deduct from a salaried employee's pay when the employee "absents himself from work for a day or more for personal reasons, other than sickness or accident." 29 C.F.R. § 541.118(a)(2). An employer may also deduct from the salaried employee's pay "for absences of a day or more occasioned by sickness or disability (including industrial accidents) if the deduction is made in accordance with a bona fide plan, policy or practice of providing compensation for loss of salary occasioned by both sickness and disability. 29 C.F.R. § 541.118(a)(3).

In this case, Eldre offers sick days to exempt employees. Thus, the salary basis test is not violated when an exempt employee is absent for a day or more because of sickness. In such instances, if the employee has no further leave time available, he/she may be docked for the full day absence without violating the salary basis test and without jeopardizing his/her exemption.

The foregoing implies that deductions from salary for partial-day absences are prohibited. *See Donovan v. Carls Drug Co., Inc.*, 703 F.2d 650, 652 (2d Cir. 1983) ("A salaried … employee may not be docked pay for fractions of a day of work missed."). However, if an exempt employee is absent for a partial day, his/her leave bank may be used to fill in the gap so that he/she gets his/her full salary for the week.

Initially, it is very clear that various examples of Eldre's payroll practices with respect to exempt employees are demonstrably lawful (all DOL opinions included in Eldre Exh. X):

1. Exempt employees receive their full salary, whether they work everyday or use available benefit time [29 C.F.R. § 541.118(a)];

2. Exempt employees may receive no salary in any week in which they perform no services [29 C.F.R. § 541.118(a) ("This policy is also subject to the general rule that an employee need not be paid for any workweek in which he performs no work..")], which could include full-week shutdowns, although benefit time may be used to cover some of that time;

3. Deductions for full-day absences for personal reasons may be made [29 C.F.R. § 541.118(a)(2); 1999 DOLWH LEXIS 61 (May 27, 1999)];

4. Deductions for full-day absences for sickness may be made, both before an employee has qualified for sick days and after he/she has exhausted available leave [29 C.F.R. § 541.118(a)(3); 2003 DOLWH LEXIS 12 (May 5, 2003)];

5. Benefit time may be docked in partial-day increments [1999 DOLWH LEXIS 61 (May 27, 1999); 1998 DOLWH LEXIS 28 (Feb. 27, 1998)];

6. Exempt employees may be absent for a full day, but receive ½ day of benefit time, either because that is all they have left or because they choose to save part of their bank [29 C.F.R. § 541.118(a)(3); 1999 DOLWH LEXIS 61 (May 27, 1999)];

7. Partial day deductions from pay may occur for absences covered by the Family Medical Leave Act (FMLA) [29 U.S.C. § 2612(c); 29 C.F.R. § 825.206(a); 2003 DOLWH LEXIS 12 (May 5, 2003)];

8. Exempt employees need not receive their full salary in the initial and/or terminal weeks of employment [29 C.F.R. § 541.118(c) ("Failure to pay the full salary in the initial or terminal week of employment is not considered inconsistent with the salary basis of payment. In such weeks the payment of a proportionate part of the employee's salary for the time actually worked will meet the requirement.")].

As one can see from the regulation itself, the FLSA and the salary basis test clearly allow for numerous deductions from an exempt employee's salary. "Although an employee may have had his overall compensation reduced, he may still be considered an exempt employee." *Phillips*

*v. Capital Toyota, Inc.*, 2006 U.S. Dist. LEXIS 33622, *11 (E.D.Tenn. May 22, 2006).

Moreover, the mere fact that an exempt employee has his/her time tracked and must sign a time card each day "does not preclude the application of the exemption." *Id*. at *10 (citation omitted); *see also* 2006 DOLWH LEXIS 9 (March 10, 2006) (employers may require exempt employees to track their hours and work a specified schedule, such as 45 hours per week).

Finally, Eldre's computerized payroll system considers 8 hours to be a full day and therefore 40 hours to be a full week. Thus, for computer purposes only, a salaried employee will have 40 hours punched into the computer in order to get their full salary, even though they may have worked 45 or more hours. The coding of the 40 hours may include a combination of work time and leave time. The number of hours punched into the computer to generate payroll, however, bears no relation to the actual number of hours worked by exempt employees. Kauman Dep., pp. 44:13-45:2, 46:3-13, 48:10-14, 128:8-11, 129:12-17, 178:11-180:8, 187:14-188:9, 191:6-20; Davis Dep., p. 110:2-16. It is not a violation of the FLSA for Eldre to convert salaried employee absences and work days into numbers so that the computer can generate payroll. *See Wainscoat v. Reynolds Elec. & Eng. Co., Inc.*, 1970 U.S. Dist. LEXIS 9743, *5 (D.Nev. Oct. 26, 1970) ("This is a mere bookkeeping device and is not inconsistent with a salary basis.");

Against this backdrop, Plaintiffs attempts to claim they were all subject to impermissible deductions from their salaries. The Supreme Court has stated that the salary basis test is violated if "as a practical matter" (1) the employer has an "actual practice of making such deductions," or (2) when an employer has an "employment policy that creates a 'significant likelihood' of such deductions." *Auer v. Robbins*, 519 U.S. 452 (1997). Importantly, *Auer* requires a "clear and particularized policy – one which effective communicates that deductions will be made in specified circumstances." *Id*. at 911. Plaintiffs claim that Eldre violated the FLSA and the

salary basis test promulgated thereunder by: (1) subjecting their salary to partial day deductions; (2) subjecting them to possible full day deductions because of the "3 hour rule" contained in Eldre's Employee Handbook; and (3) subjecting them to deductions because of plant shutdowns. There are clear and unavoidable genuine issues of material fact with respect to each of these contentions, thus precluding summary judgment for the Plaintiffs.

### A. Alleged Partial Day Deductions

Eldre's Employee Handbook does not state that deductions will be made from exempt employees' salary for partial day absences. Indeed, Ms. Davis – and Plaintiffs' attorney in his questioning – acknowledged that the Employee Handbook does not contain any policy providing for partial day docking of salaried employees. Davis Dep., pp. 92:11-95:6, 100:19-101:9. A review of the applicable provision confirms this testimony:

SICK AND PERSONAL TIME PAY POLICY

The days listed are over a calendar twelve (12) month period. Unused time is not accumulative. Time taken in excess of the short duration frame schedules will be charged against employees vacation time. Less than three (3) hours duration shall not be considered to be personal time to be charged. Four (4) hours is to be charged as one-half day. Should more than four (4) hours be taken, such time is considered to be a whole day.

On its face, this section addresses Eldre's policy towards charging employees with use of their sick and personal time. Indeed, the word "charged" is used three times. Nothing in this excerpt apprises exempt employees that there is a "significant likelihood" of partial day deductions to their **salary**, as opposed to their sick and personal time banks.

Ms. Davis also testified that, if it did occur, it was "very infrequent" (Davis Dep., p. 36:4-9) and that it happened "so rarely." Davis Dep., p. 51:8-9. Ms. Kaufman also testified that partial day deductions, if any, were "very little" and "very far and few between." Kaufman Dep., p. 87:4-14.

This hardly evidences a "policy" or "actual practice," and a fact finder would have to make that determination in any event. More importantly, Eldre amply demonstrated that the alleged seventy-seven (77) partial day deduction examples brought forward by the Plaintiff were insufficient to demonstrate either a policy or actual practice of partial day deductions. Notably, Plaintiffs only attached time cards to their motion, which at most would show absences for employees. They failed to include any payroll records and Ms. Kaufman made it clear that the time cards alone do not reflect what the employee might have been paid that week. Kaufman Dep., pp. 51:5-13; 54:24-55:4; 132:24-133:3; 161-162; 186:4-7. Thus, simply looking at a set of time cards, which simply note whether an employee was present on a particular day and/or what leave time might have been used, does not establish what the employee was paid that week. To determine if any docking of salary occurred, permissible or impermissible, payroll data must be consulted. For this reason alone, Plaintiffs' motion is insufficient and must be denied.

Although Plaintiffs allege the Eldre time cards (not payroll records) show seventy-seven (77) instances where a partial day docking occurred, the time cards and payroll records, coupled with testimony about the very time cards at issue, clearly show otherwise. There are genuine issues of material fact regarding the seventy-seven alleged partial day absences/deductions and, accordingly, whether there is any "policy" and/or "actual practice" of such deductions. These alleged partial day dockings appear to be anything but, and actually are largely explained as: (1) non-exempt employees (i.e., not members of the class); (2) an employee in the final week of employment; (3) situations where employees did not work at all in a work week; (4) full day absences; (5) employees who had leave time available to them, but chose not to use that leave time, saving it until later; and (6) employees who received their full salary and/or received the pay to

which they were entitled, and in some cases more.  *See* Eldre Response to Plaintiffs' Local Rule 56.1 Statement of Material Facts, ¶ 4.

Plaintiffs even go so far as to suggest that Ms. Kaufman admitted that these 77 alleged instances involved partial day deductions.  However, this allegation is a blatant misrepresentation of Ms. Kaufman's testimony.  The Matusz Affidavit, at paragraph 9 (not 6) cites Kaufman Dep., pp. 150-178 for this proposition.  Ms. Kaufman was being asked to review the time cards in question and simply state whether or not it appeared exempt employees were present on any particular day.  She was not asked to state whether or not employees were paid for those days and/or whether they were docked any pay for those days.  This is amply demonstrated not only by the testimony itself, but also by the index to her testimony (included in Eldre Exh. F).  Between pages 150 and 178 of her deposition, the word "present" appears 108 times, while the words "pay" or "paid" appear a total of 4 times.  Thus, Ms. Kaufman did not testify that any exempt employee was docked.  She simply stated whether or not they were at work on particular days, based on her review of the time cards presented to her by Plaintiffs' attorney.

Moreover, as extensively documented by Eldre (Resp. to Pl. LR 56.1 Statement, ¶ 4), far from supporting Plaintiffs' position regarding partial day docking, Ms. Kaufman identified numerous instances where exempt employees were actually absent for full days, contrary to Plaintiffs' allegations herein.  Eldre's detailed analysis of the time cards submitted by Plaintiffs in support of their motion for summary judgment clearly demonstrate that numerous genuine issues of material fact preclude summary judgment on this claim.

Moreover, the testimony clearly establishes that many employees were absent for full days, but chose to use only one-half day of leave time to cover that absence.  Giuliano Decl., ¶ 21; Giuliano Dep., pp. 93:23-94:4, 96:16-19, 98:11-19, Kaufman Dep., p. 80:13-16, 180:21-

181:3; Davis Dep., pp. 91:4-7, 106:23-107:3.  This demonstrates that there are genuine issues of material fact regarding several of the alleged partial day deductions in this case and also precludes summary judgment for the Plaintiffs.  *See Hood v. Mercy Healthcare Arizona*, 23 F. Supp. 2d 1125, 1131 (D.Ariz. 1997) (denying plaintiffs' motion for summary judgment and granting summary judgment to defendant in part because plaintiffs failed to show a clear and particularized policy of reducing pay, where employees chose not to use available leave time).

## B.     The "3 Hour Rule"

Plaintiffs also attempt to rely upon Eldre's Employee Handbook in order to prove a policy of impermissible deductions.  The second portion of the Employee Handbook relied upon by Scholtisek, also in the Sick and Personal Time Pay Policy, provides:

> <u>An employee who has used up all sick, personal and vacation time and is absent for any reason</u>, will not be paid for the day or days the employee is absent.
>
> If the employee is absent less than three (3) hours, in accordance with the policy, there is no loss of pay.  Therefore, once absent for more than three (3) hours, the employee cannot and will not be allowed to come to work.  The employee will not be paid for the entire day.

The first sentence simply states that absent employees with no more leave time will not be paid "for the day or days the employee is absent."  Far from indicating an intent to dock for partial day absences, this states a clear intent to dock pay only for the "day or days" an exempt employee is absent.  As discussed above, deductions from salary for full day absences are permissible under the FLSA.

The second paragraph also does not state that exempt employees will be docked for partial day absences.  Indeed, partial day absences of three (3) hours or less are specifically compensated as full days, countering any claim of partial day docking.  Plaintiffs provide no evidence to show that this aspect of the Employee Handbook has ever been applied in a manner

resulting in an impermissible deduction from an employee's pay.  Indeed, Mr. Scholtisek himself testified that he would come to work later in the day after missing the morning for a doctor's appointment or the like.  Scholtisek Dep., p. 56:10-13.  Any attempt to present such evidence on *reply*, after four (4) years of discovery and motion practice, would be highly suspect.  This alone demonstrates that there is no policy of impermissible deductions based on this provision of the Employee Handbook.  *See Baden-Winterwood v. Life Time Fitness,* 2007 U.S. Dist. LEXIS 58753, *35-36 (S.D.Ohio Aug. 10, 2007) ("Here, it would be illogical to find that Defendant had an actual practice of improper deductions in the absence of a track record of deductions.");  *Richardson v. Genesee County Comm. Mental Health Services*, 45 F. Supp. 2d 610, 617 ((E.D.Mich. 1999) (denying plaintiffs' motion for summary judgment and granting defendant's motion; "Finally, the policy language is infected with ambiguities, and since there is no evidence of how the policy is actually applied, the disciplinary policy for work rule violation does not jeopardize the plaintiffs status as salaried employees exempt from overtime regulations.");  *Belton v. Sigmon,* 101 F. Supp. 2d 435, 441 (W.D.Va. 1998) (granting summary judgment to Defendant; "Plaintiffs are unable to identify a single instance in which one of them was either sent home or went unpaid pursuant to this policy.  In fact, the very heart of plaintiffs' complaint is their claim that they were required to work *too many* hours.") (emphasis in original).

Additionally, Mr. Giuliano testified that this "3 hour rule" had never been enforced in any way.  Giuliano Dep., pp. 95:7-22, 113:17-114:4, 121:6-122:24, 123:6-9, 129:2-8.[5]  Similarly, Lee Moss testified that the "3 hour rule" simply was not invoked and did not occur at Eldre.  Moss Dep., pp. 44:20-23, 87:19-88:13, 89:20-90:14, 90:24-91:3.  Rick Whistler testified that this

---

[5] Mr. Giuliano also identified some other parts of the Employee Handbook that were not followed or enforced.  Giuliano Dep., pp. 97:5-19, 127:12-128:11, 170:21-24.

provision was not only unenforced (Whistler Dep., pp. 60:19-62:22, 70:2-7), but also that exempt employees regularly come into work after missing more than three hours in the morning. Whistler Dep., pp. 61:7-12, 61:23-62:4, 69:2-14, 70:20-71:4 ("It's very common.").

Based on the foregoing, Eldre exempt employees were clearly not subject to a "significant likelihood" that they would be docked pay because of this policy. Therefore, Plaintiffs' Motion for Summary Judgment should be denied. *See Ahern v. The County of Nassau*, 118 F.3d 118, 121-122 (2nd Cir. 1997) (affirming summary judgment for employer where policy did not clearly communicate specific circumstances when a deduction would definitely occur); *Balgowan v. State of New Jersey*, 115 F.3d 214, 219 (3rd Cir. 1997) ("Furthermore, DOT's non-enforcement of its disciplinary policy and the fact that no engineer has ever suffered a reduction in pay under the policy, provide even stronger evidence that the DOT's disciplinary policy is not one under which there is a 'significant likelihood' of deduction."); *Michigan Ass'n of Governmental Employees v. Michigan Dept. of Corrections*, 992 F.2d 82, 86 (6th Cir. 1993) ("The execution of the policy may shed more light on the actual policy than an ambiguous excerpt from an employee manual.").

### C.     *Alleged Plant Shutdowns*

Plaintiffs also claim that they suffered impermissible deductions from their salaries during alleged plant shutdowns. The "evidence" to support this assertion is the Matusz Affidavit (¶ 12), which purports to provide evidence of multiple plant shutdowns, but provides no proof in admissible form concerning these alleged shutdowns. This neither complies with FRCP 56 nor Local Rule 56. *See Beyah v. Coughlin*, 789 F.2d 986, 989-990 (2nd Cir. 1986) (attorney's affidavit insufficient on motion for summary judgment, even though it attached documents, because it was not based on personal knowledge); *Kamen v. AT&T Co.*, 791 F.2d 1006, 1011 (2nd

Cir. 1986) (attorney affidavit insufficient where "crucial statement" was not based on personal knowledge); *Ditullio v. Village of Massena*, 81 F. Supp. 2d 397, 403 (N.D.N.Y. 2000) ("To the extent that Defendant's Attorney's affidavit contains factual assertions not made upon personal knowledge and/or legal arguments, such portions of her affidavit will be stricken and not considered by the Court in connection with the pending motions.").

In any event, the use of the word "shutdown" is actually misleading. Shutdowns would never affect all employees, as the plant never shut down completely. Moss Dep., p. 49:5-7. Moreover, while partial plant shutdowns sometimes occurred, the testimony was that they would often be for a week in duration. Kaufman Dep., p. 109:2-6; Erdle Dep., p. 41:17-42:3; Giuliano Dep., p. 148:9-23; Pl. Exh. E (time card ELD3202). *See* 29 C.F.R. § 541.118(a) (exempt employees need not be paid in any week in which they perform no services). In any event, exempt employees were never prohibited from working during a shutdown. Moss Dep., p. 49:24-50:5, 50:10-12, 53:12-54:2; Giuliano Dep., pp. 170:25-171:7, 174:3-22, 176:7-177:4.

Based on the foregoing, the Plaintiffs failed to demonstrate their entitlement to judgment as a matter of law with any evidence in admissible form. In any event, there is a genuine issue of material fact concerning the nature and extent of plant shutdowns, and therefore issues concerning the legality of deductions from salaries, if any, associated with those shutdowns.

### D. *Case Law Supports Denying Plaintiffs' Motion*

Clearly, numerous genuine issues of material fact exist regarding the alleged policy and/or actual practice of impermissible deductions from Plaintiffs' salaries. As discussed above, Plaintiffs did not even present the Court with evidence that their salaries were docked at all; they presented only time cards and no payroll records. In any event, the FLSA and the salary basis test in particular, permit deductions from exempt employees' salaries in a number of

circumstances.  Indeed, as discussed at length in Eldre's response to Plaintiffs' Statement of Undisputed Material Facts, many of the claimed partial day absences are in fact full day absences and/or fit within another category of permissible deductions from salaries.  Eldre has shown that genuine issues of material fact exist with respect to the 77 claimed partial day deductions, the "3 hour rule," and plant shutdowns.  Thus, summary judgment for the Plaintiffs is not appropriate.

In addition to the cases cited above, several other cases deny summary judgment when genuine issues of material fact exist concerning the existence of a policy or actual practice of impermissible deductions.  *See, e.g., Yourman v. Giuliani*, 229 F.3d 124, 130-131 (2nd Cir. 2000) (vacating summary judgment for employer and remanding for consideration of multiple factors relevant to determination of whether employer had an "objective intention" to pay its employees on a salary basis); *Sharer v. Tandberg, Inc.*, 2007 U.S. Dist. LEXIS 14246, *16 (E.D.Va. Feb. 27, 2007) ("[F]actual evidence exists supporting both parties' positions, and there is nothing more material to the resolution of this case than the existence of a partial-day docking policy.  At this stage of the proceeding, the Court is not in a position to act as a trier of fact.  Accordingly a dispute of material fact remains for the jury."); *Burns v. Horry County*, 2006 U.S. Dist. LEXIS 822, *9 (D.S.C. Jan. 4, 2006) ("factual issues exist whether the salary basis test is met"); *Blue v. The Chubb Group*, 2005 U.S. Dist. LEXIS 14253, *33-34 (N.D.Ill. July 13, 2005) (issue of fact concerning partial day deductions); *Cerbu v. Chicago Building Services, Inc.*, 1998 U.S. Dist. LEXIS 969, * 7 (N.D.Ill. Jan. 22, 1998) ("In this case, there is enough evidence in the record to show a genuine issue of material fact as to whether defendants had an actual practice of, or a significant likelihood of, making deductions."); *Carter v. City of Charleston*, 995 F. Supp. 622 (D.S.C. 1997) (denying plaintiffs' motion for summary judgment because there were issues of fact concerning the existence of an impermissible policy of deductions); *Lucero v. Univ. of Cal.*,

1993 U.S. Dist. LEXIS 12208 (N.D.Cal. Aug. 24, 1993) (denying plaintiffs' motion for summary

judgment); *Dole v. Diversified Collection Services, Inc*., 1990 U.S. Dist. LEXIS 14115 (N.D.Ill.

Oct. 23, 1990) (denying plaintiff's motion for summary judgement).

Here, the Plaintiffs' failure to even present payroll evidence of deductions and little

evidence of partial day absences would actually support granting summary judgment to Eldre.

*See Kelly v. City of New York*, 2001 U.S. Dist. LEXIS 16596, *21 (granting summary judgment

to defendant where "sixteen isolated instances of impermissible deductions over a ten year

period simply does not demonstrate that the Defendants did not intend to treat correction captains

as exempt employees").

## IV.     Eldre Is Entitled to the FLSA "Window of Correction"

Plaintiffs seek to have this Court declare that they were never exempt employees and

award them two to three years of overtime under the FLSA (six years under New York law), all

on the basis of the alleged violation of the salary basis test.  Although Eldre has demonstrated in

Point III above that numerous genuine issues of material fact preclude summary judgment for the

Plaintiffs, summary judgment for Eldre would be appropriate based on the FLSA's "window of

correction," which is part of the salary basis regulation itself.  *See* 29 C.F.R. § 541.118(a)(6).

That regulation provides:

> The effect of making a deduction which is not permitted under these
> interpretations will depend upon the facts in the particular case. Where deductions
> are generally made when there is no work available, it indicates that there was no
> intention to pay the employee on a salary basis**.  In such a case the exemption
> would not be applicable to him during the entire period when such deductions
> were being made. On the other hand, where a deduction not permitted by these
> interpretations is inadvertent, or is made for reasons other than lack of work, the
> exemption will not be considered to have been lost if the employer reimburses the
> employee for such deductions and promises to comply in the future.

Thus, contrary to Plaintiffs' assertion (or assumption), a violation of the salary basis test does not

necessarily destroy the Plaintiffs' exemption, particularly where deductions, if any, are made for "reasons other than lack of work."

Although Eldre disputes that any practice or policy of impermissible deductions exists (*see* Point III *supra*), if the Court were to find that some impermissible deductions did occur, then Eldre has promised to reimburse employees for such deductions and to comply with the FLSA in the future. Giuliano Decl., ¶ 72. Mr. Giuliano also testified that he explicitly told the HR/Payroll department to make sure no partial day deductions occurred "until this allegation is resolved." Giuliano Dep., p. 101:18-24; *see also* Giuliano Dep., pp. 102:3-12; 103:4-25; 110:23-111:3. Plaintiffs have pointed to no alleged incident of partial day docking postdating Eldre's awareness of the filing of this lawsuit, nor to any other alleged impermissible deductions.

The witnesses appear to agree that deductions prior to the commencement of this lawsuit, if any, were very unusual. Ms. Davis also testified that, if it did occur, it was "very infrequent" (Davis Dep., p. 36:4-9) and that it happened "so rarely." Davis Dep., p. 51:8-9. Ms. Kaufman also testified that partial day deductions, if any, were "very little" and "very far and few between." Kaufman Dep., p. 87:4-14. This, of course, belies any claim that there was a policy or actual practice of impermissible deductions, which makes the window of correction available to Eldre. *See Yourman v. Giuliano,* 229 F.3d 124, 128 (2nd Cir. 2000) (window of correction available if no policy or actual practice exists);[6] *Kuchinskas v. Broward County*, 840 F. Supp.

---

[6] *Yourman* ruled that a defendant was not entitled to the window of correction if it had an actual practice or policy of impermissible deductions. However, it did so in reliance on *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 615-617 (2nd Cir. 1991), which predates *Auer v. Robbins* and failed to address the "lack of work" prong of the window of correction, which was specifically addressed in *Auer*. *See* 519 U.S. at 462 (resolving circuit split and determining that "inadvertence" and "reasons other than lack of work" referenced in the regulation were alternative grounds to invoke the window of correction). In any event, in this case, Plaintiffs have not established an actual practice nor a policy, and therefore the window of correction is available.

1548, 1556-1557 (S.D.Fla. 1993) (granting judgment to employer based on window of correction); *Reeves*, 77 F. Supp. 2d at 252 (judgment granted to employer).

Moreover, even if the window of correction is not available to Eldre, Plaintiffs' assumption that they are entitled to overtime is misplaced. The effect of a violation of the salary basis test "will depend upon the facts in the particular case." 29 C.F.R. § 541.118(a)(6). Notably, under the revised regulations, the Department of Labor has jettisoned the "significant likelihood" test, and thus after August 2004, only "[a]n actual practice of making improper deductions demonstrates that the employer did not intend to pay employees on a salary basis." 29 C.F.R. § 541.603(a). Moreover, if the Court were to find that an actual practice exists, then the FLSA collective members would not lose their exemption for the entire statute of limitations period. Rather, they would lose the exemption only "during the time period in which the improper deductions were made for employees in the same job classification working for the same managers responsible for the actual improper deductions." 29 C.F.R. § 541.603(b). Although these revised regulations were not in effect at the commencement of this lawsuit, "they are illustrative of the Secretary's current interpretation of the statutory requirements to the salary basis test." *McDowell v. Cherry Hill Township*, 2005 U.S. Dist. LEXIS 29327, *25 (D.N.J. Nov. 21, 2005)

In any event, under both the old and new regulations, Plaintiffs would not be entitled to overtime pay for the entire statute of limitations period. Rather, under the old regulations applicable here, Eldre is entitled to the window of correction and therefore Plaintiffs' FLSA claims should be dismissed in their entirety, subject to Eldre's promise to pay for any inpermissible deductions that are found by a trier of fact and its promise to comply with the FLSA in the future. Notably, *Auer* specifically held that the window of correction may be

invoked even though the money has not yet been paid, as long as the promise is made. *See Auer*, 519 U.S. at 463-464 (defendant had not yet repaid the deductions); *Moor v. Hannon Food Service, Inc.*, 317 F.3d 489, 498 (5th Cir. 2003) ("Reimbursement may be made at any time to preserve the window of correction.").

**V.      The New York Labor Law Claims Must be Dismissed in Their Entirety**

After seeking summary judgment on the FLSA claims, Plaintiffs then seek summary judgment on the New York State Labor Law claims, based on the same evidence.  In other words, Plaintiffs suggest that the alleged deductions from their salary, which are said to be impermissible under the FLSA, are also impermissible under the New York Labor Law.  The problem for Plaintiffs, however, is that there is nothing like the salary basis test contained anywhere in the New York Labor Law.

The salary basis test "is a creature of the Secretary's own regulations."  *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 257 (S.D.N.Y. 1997).  Indeed, the salary basis test is not in the FLSA itself, but is found at 29 C.F.R. § 541.118.  There is no analogous provision in the New York State laws and regulations.   The New York regulations apply only to "employees."  12 N.Y.C.R.R. § 142-1.1(a).  An employee is defined to exclude executive, administrative and professional employees.  12 N.Y.C.R.R. § 142-2.14.  While this section uses the term "salary," it does NOT incorporate the Federal exemptions, nor does it use or define "salary basis."

The only place in the New York regulations where the Federal FLSA exemptions are mentioned is:

12 N.Y.C.R.R. § 142-2.2  Overtime rate

An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions of Section 7 and Section 13 of 29 U.S.C. 201 et seq., the Fair Labor Standards Act of 1938, as Amended, provided, however that the exemptions set forth in Section 13(a)(2) and 13(a)(4) shall not apply. In addition, an employer shall pay employees subject to the exemptions of Section 13 of the Fair Labor Standards Act, as Amended, except employees subject to Section 13(a)(2) and 13(a)(4) of such Act, overtime at a wage rate of one and one-half times the basic minimum hourly rate.

Note that this section is already limited to what an employer must pay an "employee" (as defined above), meaning that executives, administrators, and professionals (as defined under New York law) will have already been excluded from the analysis.  More importantly, this section - which is called "Overtime Rate" and does not exempt anybody from overtime pay - simply specifies the calculation of the overtime rate.  If you are non-exempt under Federal law, then you get 1 ½ times your regular rate.  If you are exempt under Federal law, then you get 1 ½ times the basic minimum hourly rate.  This section does not say, however, that those exempt under Federal law are exempt under New York law.  It only addresses the overtime rate, which of course already assumes the person is entitled to overtime pay of some kind, meaning the salary basis test would be irrelevant at that point.

Based on the foregoing, there are significant differences between the FLSA and New York State law with respect to exemptions from overtime.  First, the FLSA exemptions are an affirmative defense that must be pled in an answer and for which the burden of proof rests upon the defendant employer.  Under New York State law, however, the exemptions are part of the definition of "employee" itself, and therefore are properly part of the plaintiff's burden of

proving that they are an employee entitled to overtime under the applicable regulation. Moreover, the FLSA's exemptions are supplemented via the Secretary of Labor's regulations to include not only a duties test but also the salary basis test that is the focus of the Plaintiffs' claims in this action. In contrast, the New York State law does not contain any reference to the salary basis test, nor does New York State incorporate that test into its regulations in any way.

A few federal and state cases have noted in passing that the language of the New York State regulation references the FLSA exemptions, and that such regulations are similar. *See, e.g., Scott Wetzel Services, Inc. v. New York State Board of Industrial Appeals*, 252 A.D.2d 212, 682 N.Y.S.2d 304 (3d Dep't 1998); *Debejian v. Atlantic Testing Laboratories, Ltd.*, 64 F.Supp.2d 85, 87 n.1 (N.D.N.Y. 1999) (New York State regulations "are substantially similar to the federal scheme"); *Horkan v. Command Security Corp.*, 285 A.D.2d 529, 728 N.Y.S.2d 495 (2d Dep't 2001); *Ballard v. Community Home Care Referral Service, Inc.*, 264 A.D.2d 747, 695 N.Y.S.2d 130 (2d Dep't 1999); *Topo v. Dhir*, 2004 U.S. Dist. LEXIS 4134 (S.D.N.Y. March 16, 2004) ("There is general support for giving FLSA and the New York Labor Law consistent interpretations."); *Noble v. 93 University Place Corp.*, 303 F.Supp.2d 365, 376 (S.D.N.Y. 2003). *See also, Wright v. Aargo Security Services, Inc.*, 2001 U.S. Dist. LEXIS 882 n.1 (S.D.N.Y. February 2, 2001) (assuming for purposes of the motion that the standards are substantially the same under New York State Labor Law); *Debejin*, 65 F.Supp.2d at 87 n.1 (noting that defendant did not dispute that the standards are similar).

Importantly, none of the cases decided above discuss in any way the application of the salary basis test to state law claims. Indeed, all of those cases focus upon the duties of the purportedly exempt employees or other grounds. However, in its decision certifying the class in this case, this Court agreed with Eldre that the salary basis test simply did not exist under New

York law. *See Sholtisek v. Eldre Corp.*, 229 F.R.D. 381, 392 n.7 (W.D.N.Y. 2005) (noting that

the New York regulations "do not use the term 'salary basis,' nor is that term (or any equivalent

of the salary basis test) contained anywhere in the New York regulations").[7] Given that

Plaintiffs' entire argument depends on the concept that the FLSA salary basis test was violated,

their claims under the New York State Labor Law must be dismissed.

Plaintiffs attempt to get around this law of the case by citing *Torres v. Gristede's*

*Operating Corp.*, 2006 U.S. Dist. LEXIS 74039 (S.D.N.Y. 2006), which looked up the word

"salary" in the dictionary and extrapolated that employers must satisfy both a duties test and a

salary test to establish executive or administrative exemptions in New York. *Id*. at *42. This

conclusion departs far from the plain meaning of the word "salary" and clearly suffers from that

court's unwillingness to recognize key differences between the FLSA and New York law.

Indeed, by suggesting that the burden of proof was on the employer under New York law ignores

that New York's executive, administrative and professional exceptions are contained in the very

definition of "employee," for which the plaintiffs would have the burden of proof to show an

entitled to alleged unpaid wages.

Moreover, the dictionary definitions cited by the court in *Torres* and relied upon by

Plaintiffs in this case define "salary" as agreed upon or fixed compensation paid at regular

intervals and not on an hourly basis. No one has ever claimed in this lawsuit that any Plaintiffs

were paid by the hour. Rather, the claim has always been that their ***salaries*** were impermissibly

---

[7]  At the time of the motion, Eldre asserted that no other court had decided that issue, and this
Court faulted Defendant's research, citing to some other cases suggesting that a "salary" test did
not exist under New York law.  229 F.R.D. at 391.  However, those cases involved professional
employees, for whom there is no salary requirement at all under New York law, much less a
salary test, a distinction which the Court did note in its decision.  229 F.R.D. at n.7.  Thus, this
Court's earlier decision in this case is the first to determine that the salary basis test does not
exist under the New York Labor Law.

docked on occasion and therefore that they were not paid on a "salary basis."  Even the FLSA

salary basis test allows for multiple forms of deductions, as discussed above, so for the *Torres*

court to suggest that New York allows no deductions or somehow silently incorporates the

FLSA's salary basis test finds no support under the very methodology utilized by that court.

Given that all of the Plaintiffs' salaries were fixed on a weekly basis and these fixed amounts

clearly exceeded the amounts required in 12 N.Y.C.R.R. § 142-2.14 (as amended in 1997, 2000

and 2004)--(see Exh. P, which contains at least one quarterly report for 1997-2004), there is no

violation of New York State law and this claim must be dismissed in its entirety.

**VI.      Even if the Salary Basis Test Applies in New York, All of the Plaintiffs Who Qualify as Professional Employees Must be Dismissed**

Even if the salary basis test exists in New York law, this Court and the *Torres* court agree

that there is no salary requirement at all for professional employees, which is another distinction

between New York and Federal law.  The New York regulations state that work done in a bona

fide professional capacity means work by an individual:

> (a) whose primary duty consists of the performance or work: requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study, as distinguished from a general academic education and from an apprenticeship, and from training in the performance of routine mental, manual or physical processes; or original and creative in character in a recognized field of artistic endeavor (as opposed to work which can be produced by a person endowed with general manual or intellectual ability and training), and the result of which depends primarily on the invention, imagination or talent of the employee; and

> (b) whose work requires the consistent exercise of discretion and judgment in its performance; or

> (c) whose work is predominantly intellectual and varied in character (as opposed to routine mental, manual, mechanical or physical work) and is of such a character that the output produced or the result accomplished cannot be standardized in relation to a given period of time.

12 N.Y.C.R.R. § 142-2.14(c)(4)(iii).  The duties definition provided is very similar to that required under federal law, but as discussed above, there is no salary requirement.

As explained in the Giuliano Declaration (¶¶ 3-7), Eldre Corporation is a world leader in the manufacturing of laminated bus bars for power distribution.  Laminated bus bars are custom designed, current-carrying devices consisting of single or multiple layers of fabricated copper, which are separated by thin dielectric materials, laminated into a single, unified structure.  In addition to manufacturing single and multi-layer bus bars, Eldre manufactures complete Power Distribution Assemblies ("PDAs").  PDAs are integrated solutions that incorporate bus bars and discrete components such as circuit breakers, electrolytic capacitors, current sensors, jumper cables, filters, and connectors into complete power management systems that can be vertical, rack mounted or modular in design.

Each bus bar design is a 100% unique, custom-designed solution, specifically engineered to solve a power distribution problem.  Sizes and applications range from surface mounted bus bars the size of a fingertip to multi-layer copper bars that may exceed twenty feet in length, which are used in large radar systems.  Each unique application is designed by a team of engineers utilizing mechanical, electrical, chemical, and structural engineering disciplines, as well as in-depth knowledge of metallurgical properties and manufacturing processes.  These engineers utilize many types of Computer Assisted Design ("CAD") software, including Auto Desk, Pro-E, AutoCad, and many other software formats.

Mr. Giuliano provided some basic job descriptions from Eldre's files (Exh. T) and also described in more detail the educational requirements and primary duties of Eldre's Chief Engineer (Giuliano Decl., ¶¶ 27-31), Design/Process/Project/Product Development Engineers (Giuliano Decl., ¶¶ 32-35), Manufacturing Engineer (Giuliano Decl., ¶¶ 36-39), Industrial

Engineer (Giuliano Decl., ¶¶ 40-43), Research Lab/Chemical Engineer (Giuliano Decl., ¶¶ 44-47), Cost Estimator/Engineer (Giuliano Decl., ¶¶ 48-51), Quality Control Manager/Supervisor/Engineer (Giuliano Decl., ¶¶ 52-55), Marketing/Product Development/Sales Engineer (Giuliano Decl., ¶¶ 56-59), Managers/Supervisors of Engineers (Giuliano Decl., ¶¶ 60-62), and Accounting Personnel (Giuliano Decl., ¶¶ 63-65). Mr. Giuliano also identified which class members fell within these job positions. Giuliano Decl., ¶ 68 & Exh. U. While Eldre has identified these positions as professional for purposes of this motion, it does not concede that the other positions are not professional as defined under New York law, only that the resolution of that issue with respect to those positions is not appropriate via a motion for summary judgment.

Other than the accounting positions, which are slightly different but still professional, the positions described above are directly involved in the mechanical, electrical, and/or chemical process of developing, designing, testing and manufacturing power distributions systems, clearly a very technical process requiring the application of science or learning one would typically obtain through a course of specialized instruction (e.g., engineering). Mr. Giuliano describes each job position, including the independent discretion and judgment exercised. Finally, there is nothing routine about these job positions and the tasks involved, particularly when one considers that each Eldre bus bar is a custom designed and engineered product for the customer.[8]

---

[8] Plaintiffs' single-minded focus on the federal salary basis test resulted in absolutely no discovery by the Plaintiffs regarding the job duties of any plaintiffs, despite having the opportunity to review personnel files from every plaintiff since April 2005. *See* Exh. W. However, Plaintiff Lee Begy, a Cost Estimator, admitted at his deposition that his job was to "figure out how much material we would have to have to do the job." Begy Dep., p. 5:2-19. To do so, he drew upon his 28 years of training and manufacturing experience. Begy Dep., pp. 5:23-6:4. Mr. Begy admitted that his job duties required the exercise of independent discretion and judgment. Begy Dep., pp. 7:4-8:10, 51:5-16, 52:3-8, 59:12-61:14. He also utilized Computer Assisted Design (CAD) and other software. Begy Dep., pp. 50:14-51:2. Mr. Begy also conducted time and motion studies. Begy Dep., pp. 61:18-62:4. Finally, Mr. Begy admitted that all of the other cost estimators performed similar duties. Begy Dep., pp. 8:18-9:2.

(Importantly, the New York regulations require the exercise of independent discretion and judgment OR non-routine functions.  Eldre's professionals satisfy both.)

The descriptions of the job positions above provided by Eldre demonstrate as a matter of law that these class members are professionals under New York law and therefore have no claim to any particular "salary."  *See, e.g.*,  2005 DOLWH LEXIS 35 (August 26, 2006) (sales engineer duties qualify as professional); *Ake v. Tennessee Valley Auth.*, 2002 U.S. Dist. LEXIS 26590, *55 (N.D.Ala. May 23, 2002) (system engineer, without a degree, performed professional duties); *Doherty v. Center for Assisted Reproduction, P.A.*, 108 F. Supp. 2d 672, 673-674 (N.D.Tex. 2000) (person with responsibility for quality assurance programs performed professional duties); *Leslie v. Ingalls Shipbuilding, Inc*., 899 F. Supp. 1578, 1581-1582 (S.D.Miss. 1995) (Engineering Specialist performed professional duties); *Krill V. Arma Corp*., 76 F. Supp. 14, 16 (E.D.N.Y. 1948) (Junior Development Engineer performed professional duties); *Phillips v. Federal Cartridge Corp*., 69 F. Supp. 522, 526 (D.Minn. 1947) ("Engineer III"); *Dolan v. Day & Zimmerman, Inc*., 65 F. Supp. 923, 935 (D.Mass. 1946) (Senior Draftsman in engineering department performed professional duties); *Aulen v. Triumph Explosive*, 58 F. Supp. 4, 8 (D.Md. 1944) (Machine Designers perform professional duties).

*Dingwall v. Friedman Fisher Assoc., P.C*., 3 F. Supp. 2d 215 (N.D.N.Y. 1998), is particularly instructive.  There, the court first analyzed the exemption under federal law.  While the court determined that a designer of electrical systems performed professional duties, it then determined that the salary basis test under federal law had not been satisfied.  Turning to New York State law, the court noted that the New York definition of professional differed from federal law only in that it did not require a salary of any kind.  *Id*. at 220-221.  Accordingly, the court dismissed the plaintiff's claim under the New York Labor Law.

Here, irrespective of Plaintiffs' FLSA claim, the New York Labor Law claims of those plaintiffs who held professional positions must be dismissed as a matter of law, even if the Court concludes that the "salary basis test" exists for administrative and executive employees under New York Law.  Eldre is entitled to summary judgment in this regard.

<h3 style="text-align:center"><span style="font-variant:small-caps">Conclusion</span></h3>

Defendant The Eldre Corporation respectfully requests that the Court deny Plaintiffs' Motion for Summary Judgment; grant Defendant's Cross-Motion for Summary Judgment; award Defendant its costs, including reasonable attorney's fees, incurred in defense of this matter; and grant such other relief the Court deems just, proper, and equitable.

DATED:      Buffalo, New York
              January 7, 2008

> /s/ Robert C. Weissflach, Esq.
> *Attorneys for Defendant*
> *The Eldre Corporation*
> Harter Secrest & Emery LLP
> 1600 Bausch & Lomb Place
> Rochester, New York 14604
> Telephone:  (585) 231-1454
> E-mail:  rweissflach@hselaw.com